A90A0072. CROWE v. CONGRESS FINANCIAL CORPORATION (SOUTHERN).
(395 SE2d 321)

BEASLEY, Judge.

Defendant Crowe appeals the grant of partial summary judgment to plaintiff Congress Financial Corporation (Southern) and the denial of his cross-motion for partial summary judgment. The issue is the enforceability of a personal guaranty executed by Crowe in conjunction with certain financing agreements between Crowe Manufacturing Corporation of which Crowe was president and Congress' assignor, James Talcott, Inc.

What follows is undisputed. On August 1, 1984, Crowe Mfg. entered into certain financing agreements with Talcott whereby Talcott would periodically make loans to Crowe Mfg. To induce Talcott to enter into the financing arrangement, Crowe the same day executed a personal guaranty of payment of all of the liabilities and obligations at any time owing by Crowe Mfg. to Talcott under the financing agreements or otherwise.

By certified letters dated April 29, 1986, Congress notified Crowe Mfg. and Crowe individually that Congress had acquired Talcott's stock and that following the acquisition, Talcott arranged to transfer its financing business to Congress. Collectively, the letters further advised that Talcott had assigned to Congress all of its right, title and interest in the financing arrangements with Crowe Mfg., including the personal guaranty; that the assignment became effective on opening of business May 1 as to all outstanding loans, advances, and other financial accommodations under the financing agreements including the guaranty and with respect to all transactions under the financing agreements including the guaranty, arising on and after May 1; that as previously advised, Congress had been acting as agent for Talcott in connection with the financing agreements until the assignment could be effectuated; and that if there were any questions concerning the assignment not to hesitate to contact Congress.

By virtue of the substitution of Congress for Talcott, Congress became the lender for Crowe Mfg., and Congress continued to make advances to Crowe Mfg. pursuant to the financing agreements. Congress made a number of these advances at Crowe's request.

On March 9, 1987, Crowe Mfg. filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. The filing of bankruptcy was an event of default under the financing agreements.

At the time of the filing, Crowe Mfg. was indebted to Congress under the financing agreements in the amount of $3,351,577.88. After the filing, Congress continued to collect on the collateral securing Crowe Mfg.'s indebtedness.

On August 27, Crowe Mfg., Congress and Auto-Lok, Inc., which had purchased Crowe Mfg.'s assets, filed an adversary proceeding in the bankruptcy case against several defendants, including Crowe and Richmond Rack Industries, Inc. The principal purpose of the proceeding was to recover equipment removed from Crowe Mfg.'s premises allegedly without the consent of the bankruptcy court or Crowe Mfg. after the bankruptcy petition was filed. The equipment was believed to have been moved to Richmond Rack. Crowe Mfg. also sought to collect on pre-bankruptcy and post-bankruptcy accounts receivable owed by Richmond Rack. Congress joined in the proceeding because it had a security interest in Crowe Mfg.'s equipment and accounts receivable. Congress believed that all defendants, including Crowe, either were involved in removing or had possession of some of the equipment.

Crowe and another defendant in the bankruptcy adversary proceeding filed a confession of judgment in that action and on January 12, 1988, the bankruptcy court entered judgment in favor of plaintiffs directing that the equipment and documents sought be returned to Auto-Lok. Plaintiffs and the remaining defendants settled, and on August 29, the bankruptcy court approved it. On October 27, in accord with the settlement, the adversary proceeding was dismissed with prejudice against the remaining defendants.

Prior to Crowe's confession of judgment in the bankruptcy action, on November 23, 1987, Congress filed the present action against Crowe alleging, inter alia, that he was personally liable under the guaranty for Crowe Mfg.'s indebtedness to Congress then in the amount of $1,754,745.36. Congress also prayed for $1,000,000 exemplary damages, expenses of litigation including attorney fees, post-judgment interest, costs, and attorney fees of 15 percent of the indebtedness due and owing under the financing agreements and guaranty, in the amount of $263,211.

On July 11, 1989, the court entered a final judgment in favor of Congress and against Crowe in the principal amount under the guaranty of $1,776,370.80 plus post-judgment interest at the legal rate, and $266,455.62 in attorney fees pursuant to OCGA § 13-1-11.

1. Crowe contends the guaranty was satisfied or in essence discharged by way of termination of the financing agreements at their second anniversary, August 1, 1986, inasmuch as Talcott had ceased to exist on May 1, 1986.

Crowe relies on paragraph nine of the agreements which provided in part that the contract be for "an initial term of two years from its

effective date" to be "automatically renewed for successive periods of one year unless terminated on sixty (60) days' prior written notice. . . ." The provision authorized Talcott to terminate at any time and Crowe Mfg. to terminate on the anniversary of the contract's effective date in any year. Notice of termination was to be by timely mailing of a registered or certified letter to the party's usual address. If Crowe Mfg. became insolvent or a bankruptcy action was instituted, Talcott had the right to terminate at any time without notice. On the termination date, all outstanding loans and other amounts chargeable to Crowe Mfg. would become immediately due and payable without further notice or demand. Talcott's rights with respect to obligations owed to it or chargeable to Crowe Mfg.'s account prior to the termination date would not be affected by termination and would continue to be operative until all the obligations had been fully satisfied.

Crowe does not contend and there is no evidence of Crowe Mfg. or of Talcott terminating the contract. Nor did the assignment to Congress terminate the financing agreements. The language of the assignment and assumption agreement specifically references the financing agreements and the guaranty. The April 29 letters notifying Crowe Mfg. and Crowe of the assignment, rather than implying termination of the financing agreements as Crowe suggests, clearly show Congress' intent to take on Talcott's contractual loan obligation to Crowe Mfg.

In addition, there is no evidence of any separate financing agreement between Crowe Mfg. and Congress under which Congress was to loan money to the company. The fact that Congress continued to make loans to Crowe Mfg. following its acquisition of Talcott's stock belies the argument that the subject financing agreements were in any manner terminated.

Lastly, there is no evidence to support Crowe's contention that Crowe Mfg. and Talcott reached an accord and satisfaction. See OCGA § 13-4-101. The bare unsupported statement in Crowe's affidavit that all outstanding debts of Crowe Mfg. to Talcott were satisfied on or before March 9, 1987 falls far short of raising an accord and satisfaction and does not stand in the fact of Congress' specific evidence of Crowe Mfg.'s continuing debt.

2. Crowe contends that his guaranty covered only the outstanding indebtedness between Crowe Mfg. and Talcott as of the date of the assignment and assumption agreement, relying on *Rockwell Intl. Corp. v. Riddick*, 633 FSupp. 276 (ND Ga. 1986), j.n.o.v. and new trial denied, 668 FSupp. 674 (ND Ga. 1987). *Rockwell* is inapposite. In this case there is no contention or evidence that Crowe ever attempted to or did cancel, revoke, or terminate the guaranty.

In addition, the language of the financing agreements, the guar-

anty, and the assignment and assumption agreement do not support the contention that the guaranty did not extend to the advances made by Congress to Crowe Mfg. Nor do the parties' activities following the assumption support the contention. Moreover, affidavits by Congress' vice-president established that the purpose of the assignment was to substitute Congress for Talcott; the parties intended that the financing agreements and guaranty would continue in full force and effect with Congress substituted for Talcott; Crowe acquiesced in the substitution; in making the advances to Crowe Mfg., Congress relied upon Crowe's promise to pay the company's indebtedness under the financing agreements; and had Congress known that Crowe later would contend that his guaranty did not cover these advances, Congress would not have continued to make the advances to Crowe Mfg. under the financing agreements. This is not refuted by evidence.

3. Crowe contends that he should have been granted summary judgment on the unenforceability of the guaranty because Congress' action is barred by the doctrine of res judicata. He maintains that the claim under the guaranty should have been asserted in the bankruptcy adversary proceeding.

"OCGA § 9-12-40 provides that '(a) judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment was rendered until the judgment is reversed or set aside.' ' "In order for the doctrine of res judicata to apply . . . there are three prerequisites to which the situation must conform. They are: (1) identity of parties[, including their privies]; (2) identity of the cause of action; and (3) adjudication by a court of competent jurisdiction. All of these elements must [occur]. (Cits.)" (Cit.)' *Firestone Tire &c. Co. v. Pinyan*, 155 Ga. App. 343, 345 (2) (270 SE2d 883) (1980)." *Barnes v. City of Atlanta*, 186 Ga. App. 187, 188 (1) (366 SE2d 822) (1988).

The cause of action in the bankruptcy proceeding was Crowe's alleged participation with others in the unauthorized removal of Crowe Mfg.'s equipment, largely to the detriment of the purchaser of Crowe Mfg.'s assets. Even assuming, which we do not, that the bankruptcy court could properly have adjudicated a claim of Crowe's personal liability to Congress under the guaranty in this situation of corporate reorganization, see 28 USC § 157, the personal guaranty of payment by Crowe for the company's loan obligations was not relevant to the claim of violation of the corporate reorganization by aiding appropriation of equipment. Moreover, there was no evidentiary hearing in the bankruptcy court leading to the judgments against the defendants. They were accomplished through confession of judgment or settlement.

The lack of factual and legal identity between the two actions is

fatal to the claim that the present suit is barred because of res judicata.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 7, 1990 —
REHEARING DENIED JUNE 20, 1990 — CERT. APPLIED FOR.

*Robert S. Devins*, for appellant.
*Parker, Hudson, Rainer & Dobbs, C. Edward Dobbs, Jack C. Basham, Jr., David N. Heaton*, for appellee.