## A98A1961. REDWINE v. WINDHAM.
### (513 SE2d 13)

Judge Harold R. Banke.

The underlying case arose after William W. Redwine sold the Beaver Lake Golf and Country Club in Meriwether County to J. C. Patel for $800,000. Before the sale, Redwine had operated the golf course as a business from May 1987 to February 1990. According to Redwine, when he sold the business to Patel, he had an established client base and a profitable business. Redwine provided seller financing for $785,000 while Patel paid $15,000 down. The sales transaction included the land for the 183 acre golf course, and, inter alia, maintenance equipment, golf carts, restaurant equipment, walk-in coolers, kitchen equipment, display cases, underground gas storage containers, as well as a maintenance building. The closing attorney, James D. Windham, properly recorded the deed to secure debt on the realty but failed to properly file a UCC-1 financing statement on the personalty.

Just over a year later, after Patel defaulted on the mortgage payments and Redwine pursued non-judicial foreclosure proceedings, Patel filed a petition for Chapter 11 bankruptcy. Redwine filed an aggregate proof of claim for $768,242.34. But due to the UCC-1 filing error, Redwine was a secured creditor as to the land valued at $400,000 but an unsecured creditor as to all the personalty. On several schedules, Patel listed the value of the golf course personalty as $25,000, which Redwine testified here was "very low." While the bankruptcy action was pending, Redwine and Patel entered into a covenant not to sue. In exchange for withdrawing his objection to Patel's "Motion for Final Decree," in the bankruptcy case, Redwine accepted a cash payment of $32,000 from Patel. Patel and Redwine expressly covenanted that any claims against other persons not a party to their agreement would not be affected. As a result of the bankruptcy, Patel's indebtedness was restructured. Patel had to pay only $368,242.34 of the $768,242.34 claim of Redwine, most of which went to the holder of the first mortgage, not to Redwine. In the end, Patel retained possession of the golf course and continued to operate the business situated thereon.

After the conclusion of Patel's Chapter 11 bankruptcy, Redwine brought the underlying legal malpractice action against Windham. It is undisputed that because of the UCC filing error, Redwine was treated as an unsecured creditor in the bankruptcy proceeding without any rights to his collateral. As to his interest in all the personalty, Redwine was a Class 9 creditor, below all other creditors, with a claim in that category for $209,653.

An experienced bankruptcy attorney and a former bankruptcy trustee, George Rosenweig, testified at trial. Rosenweig explained that some debtors would be deterred from filing for bankruptcy

where the creditor was in a secured position. Rosenweig testified that unlike an unsecured creditor, a secured creditor has leverage in the event a debtor files bankruptcy because he can threaten to take the collateral back. Here, Redwine could not do so. According to Rosenweig, the amount of Patel's indebtedness to Redwine was "reduced very substantially" by Redwine's unsecured status. Rosenweig noted that, "the golf course wasn't being treated as a package anymore under the plan. It had been separated into components. And in a going business, of course, generally, the whole is worth more than the sum of its parts."

Redwine testified that had his collateral been fully secured he would have recovered the golf course because the business could not function without the equipment. According to Redwine, because Windham failed to file the UCC documents he had no leverage and could not obtain his equipment back which enabled Patel to continue to operate the business. Redwine testified that due to the filing error, "I got beaten out of $375,000."

Although Windham conceded liability for the UCC-1 filing error, he contested damages, contending that Redwine would have recovered the same amount of money through the bankruptcy process regardless of his relegation to an unsecured creditor position. Windham argued that the measure of damages was not the amount of the unpaid notes but the value of the unsecured collateral, set by Patel at $25,000. Windham's expert claimed that because Redwine obtained a $32,000 settlement from the covenant not to sue, Redwine actually received a windfall of $7,000. Windham also contended that having been bound by the bankruptcy plan, Redwine was estopped from claiming the value of the collateral was anything other than $25,000.[1]

The trial court found that Redwine was "bound by the doctrine of res judicata" to the value of the unsecured property as set in the bankruptcy reorganization plan. Noting that Redwine received $32,000 which exceeded the $25,000 valuation, the court held that Redwine "suffered no damage." Finding that Redwine failed to prove that the attorney fees that he incurred in the bankruptcy case were attributable to Windham's negligence, and that Redwine failed to prove damages in the legal malpractice action, the trial court directed verdicts for Windham on both those claims. Redwine appeals. *Held*:

A directed verdict cannot stand unless there is no conflict in the evidence as to any material issue and the evidence when considered in the light most favorable to the non-movant demands such a ver-

---

[1] Redwine contends that because he was essentially the only unsecured creditor, he could not have significantly improved his recovery by contesting the value of the personalty.

dict. OCGA § 9-11-50 (a). A directed verdict must be reversed if there is "any evidence" to support a contrary verdict. *Southern Gen. Ins. Co. v. Holt*, 262 Ga. 267, 268 (1) (416 SE2d 274) (1992); *Dept. of Human Resources v. Thomas*, 217 Ga. App. 174, 175 (1) (a) (456 SE2d 724) (1995).

Redwine contends that it was error to direct a verdict against his claim to attorney fees incurred in the bankruptcy action. However, an award of attorney fees is not authorized unless the party proves the actual costs incurred and the reasonableness of those costs. *Mitcham v. Blaylock*, 214 Ga. App. 29, 31 (2) (447 SE2d 83) (1994). A determination of the amount of attorney fees cannot be based on guesswork or speculation. *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (433 SE2d 606) (1993). Here, to recover the attorney fees at issue, Redwine had to prove both the amount of damages and that the filing error proximately caused those damages. *Huntington v. Fishman*, 212 Ga. App. 27, 29 (441 SE2d 444) (1994). This he failed to do.

Although Redwine asserts in his brief that "at least some of these attorney fees resulted from problems created by James D. Windham's negligence," he failed to offer evidence as to what portion of the attorney fees, if any, was attributable to Windham's negligence. Moreover, Redwine offered no evidence that his estimate of "about $20,000" in legal expenses was a reasonable value of the professional services rendered. *Hercules Automotive v. Hayes*, 194 Ga. App. 135, 136-137 (4) (389 SE2d 571) (1989). Consequently, the trial court properly directed a verdict on this issue.

Next, Redwine asserts that the trial court erred by denying the jury the opportunity to determine his damages in the legal malpractice case. He contends that in light of the conflicting evidence on proximate cause and damages, those issues remained for jury resolution. *Holt*, 262 Ga. at 268 (1).

The record shows that Redwine offered evidence that due to the filing error, he was left without a security interest in the golf course business as a whole and lacked the leverage to reclaim or recover his personal property. Redwine, with firsthand knowledge about the business and its value as a whole, provided testimony about the diminished value of the property when viewed in its components rather than as an integrated business entity. See *Loggins v. Mitchell*, 201 Ga. App. 358, 359 (1) (411 SE2d 98) (1991) (witness with knowledge, experience, or familiarity of item can testify as to value). Redwine submitted evidence which valued the personalty at $239,783. See *Southern Cellular Telecom v. Banks*, 208 Ga. App. 286, 287 (3) (431 SE2d 115) (1993). Stephen Block, Patel's bankruptcy lawyer, testified that Patel had an unsecured debt of approximately $368,000 to Redwine. According to Block, Redwine received about 15 cents on the dollar on his unsecured claim.

Notwithstanding Windham's argument to the contrary, the bankruptcy action was not res judicata as to the legal malpractice case. *Crowe v. Congress Financial Corp.*, 196 Ga. App. 36, 39 (3) (395 SE2d 321) (1990). Windham was not a party to that proceeding. Nor did the bankruptcy court address the impact of the filing error on Redwine's recovery as an unsecured creditor rather than as a secured creditor. See id.

Although the terms of a confirmed bankruptcy plan bind the debtor and all his creditors, it does not follow that Redwine was collaterally estopped from claiming a different value of the personalty in a different case not involving the debtor. 11 USC § 1141 (a). Moreover, Redwine contends that had he been a secured creditor and had Patel retained the golf course personalty as part of a reorganization plan under the "cram down" procedure, then he would have been entitled to the replacement value of the personalty. *Assoc. Commercial Corp. v. Rash*, 520 U. S. 953 (117 SC 1879, 138 LE2d 148, 157) (1997) (value of property of secured claim under 11 USC § 506 (a) is its replacement cost); 11 USC § 1129 (b) (2) (A). Windham offered no law showing otherwise. Were we to embrace Windham's argument that Redwine suffered no damage by being relegated to an unsecured status, we would have to overlook Redwine's loss of leverage, his inability to reclaim his collateral, the indivisibility of the golf club business, and his entitlement to the replacement value of his property under *Rash*, supra. Because the record shows that Redwine offered some evidence of the damages caused by the filing mistake, it was error to direct a verdict on this claim. *State Farm Mut. Auto. Ins. v. Hudson*, 215 Ga. App. 218, 220 (4) (450 SE2d 286) (1994).

*Judgment affirmed in part and reversed in part. Johnson, C. J., and Barnes, J., concur.*

DECIDED FEBRUARY 15, 1999 —
RECONSIDERATION DENIED MARCH 19, 1999 — 

*Millard C. Farmer, Jr., Joseph M. Nursey*, for appellant.
*Hawkins & Parnell, Howell Hollis III, Christine L. Mast, H. Lane Young II*, for appellee.