**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 15, 2023**

# In the Court of Appeals of Georgia

A23A0228. DEFENSE PRODUCTS AND SERVICES GROUP, INC. et al v. KINNEY et al.

A23A0537. DEFENSE PRODUCTS AND SERVICES GROUP, INC. et al v. KINNEY et al.

HODGES, Judge.

The parties to these appeals have a dispute as to whether certain individuals are Class B stockholders in two related entities. James E. Kinney, Paul W. Kinney, and Perry C. John on the one side (collectively the "Claimants"), and Defense Products and Services Group, Inc. and Defense Products and Services Group Holding Company, Inc. on the other (collectively "DPSG"), agreed to arbitrate the dispute. Due to a disagreement over the implementation of COVID-19 protocols for the arbitration hearing, DPSG did not attend a portion of the hearing. Ultimately, an arbitration award was entered in the Claimants' favor. The Claimants petitioned to

confirm the award in the Superior Court of Fulton County and, subsequently, DPSG petitioned to vacate the award and obtain a declaratory judgment on the issue of stock ownership in the Superior Court of Coweta County. The Fulton Superior Court confirmed the award and the Coweta Superior Court then dismissed the petition to vacate the award. DPSG timely appealed both orders and we have consolidated these appeals for the purpose of issuing an opinion. For the reasons that follow, we affirm in both cases.

"In reviewing a trial court's order confirming or [refusing to] vacat[e] an arbitration award, the appellate court reviews de novo the trial court's resolution of questions of law." *Adventure Motorsports Reinsurance, Ltd. v. Interstate Natl. Dealer Svcs.*, 313 Ga. 19, 25 (1) (867 SE2d 115) (2021).

So viewed, the evidence in these appeals demonstrates that the parties are in a dispute over stock ownership in DPSG and that in 2018, the parties voluntarily dismissed a lawsuit filed by DPSG in the Superior Court of Gwinnett County and agreed to arbitrate the issue of whether the Claimants are Class B Common Stock Shareholders of DPSG. Some arbitration proceedings were held in 2019, but were adjourned so the parties could explore settlement. The parties were unable to settle

the dispute and resolution of the case was delayed by the global COVID-19 pandemic.

Arbitration proceedings were resumed in 2021, at which time the arbitrator attempted to secure agreement between the parties about adopting COVID-19 protocols. The Claimants wished to have an in-person hearing where all participants would be required to show proof of vaccination or a negative COVID-19 test to appear in person; participants unable or unwilling to meet this requirement could appear remotely. Conversely, DPSG wished for an in-person hearing, but was unwilling to agree for its participants to abide by a vaccination or testing protocol. Ultimately, the arbitrator decided to conduct the entire hearing virtually, over the objection of DPSG. DPSG sought the arbitrator's recusal over its perception that the arbitrator was biased due to his personal beliefs about the propriety of being vaccinated against COVID-19, which request was denied by the arbitrator.

DPSG chose not to participate in the resumption of the arbitration hearing. On January 31, 2022, the arbitrator entered an award which found that the Claimants were each Class B shareholders and decided their percentages of ownership. The arbitrator also awarded the Claimants attorney fees.

On February 20, 2022, the Claimants petitioned to confirm the arbitration award in the Fulton Superior Court. On March 16, 2022, DPSG answered and claimed that the Claimants' petition was not ripe because the time to petition to vacate the award had not yet expired. To that end, DPSG also filed a motion to dismiss without prejudice and plea in abatement. DPSG did not argue that venue was improper in Fulton County nor did it petition the Fulton Superior Court to vacate the award.

On April 26, 2022, DPSG petitioned to vacate the award in the Coweta Superior Court. On April 28, 2022, DPSG moved to vacate the arbitration award in that same court and raised numerous substantive arguments in support. On May 31, 2022, the Claimants answered and moved to dismiss the case or transfer venue to Fulton County, which DPSG opposed.

On June 28, 2022, the Fulton Superior Court granted the Claimants' petition to confirm the arbitration award, noting that DPSG had made no substantive argument for vacatur. Subsequently, on August 19, 2022, the Coweta Superior Court dismissed DPSG's petition to vacate the arbitration award in light of the Fulton County action. DPSG appeals both orders.

*Case No. A23A0228*

4

1. In two related enumerations of error, DPSG essentially contends that the Fulton Superior Court erred in confirming the award because the Claimants' petition was not ripe, as the Coweta Superior Court had not yet ruled on its motion to vacate. We disagree.

Georgia law provides separate deadlines for parties to apply to confirm or vacate an arbitration award. It provides that "[t]he court shall confirm an award upon application of a party made within one year after its delivery to him, unless the award is vacated or modified by the court as provided in this part." OCGA § 9-9-12. The law also provides that "[a]n application to vacate an award shall be made to the court within three months after delivery of a copy of the award to the applicant." OCGA § 9-9-13 (a).

"Any application to the court under this part shall be made to the superior court of the county where venue lies, unless the application is made in a pending court action, in which case it shall be made to the court hearing that action. Subsequent applications shall be made to the court hearing the initial application unless the court otherwise directs." OCGA § 9-9-4 (a) (1).

> Venue for applications to [confirm or vacate an arbitration award] shall
> lie: (1) [i]n the county where the agreement provides for the arbitration

5

hearing to be held; or (2) [i]f the hearing has already been held, in the county where it was held; or (3) [i]n the county where any party resides or does business; or (4) [i]f there is no county as described in paragraph (1), (2), or (3) of this subsection, in any county.

OCGA § 9-9-4 (b). Here, neither party contests that the hearing took place in Fulton County and that DPSG resides in Coweta County.

We note that

[w]hen we consider the meaning of a statute, we look first to the text of the statute, and if the text is clear and unambiguous, we look no further, attributing to the statute its plain meaning. And as we look to the words of a statute, we attribute to those words their ordinary, logical, and common meanings, unless a clear indication of some other meaning appears.

(Citation and punctuation omitted.) *Hendry v. Hendry*, 292 Ga. 1, 2 (1) (734 SE2d 46) (2012). There is simply nothing in the plain language of the Georgia Arbitration Code which supports DPSG's position that the Fulton Superior Court was required to wait until resolution of DPSG's subsequently filed motion to vacate in a different court before it could rule on the Claimants' application to confirm. Indeed, the arbitration code provides that subsequent applications, such as DPSG's petition to vacate, must be made "to the court hearing the initial application", which in this case would have

6

been the Fulton Superior Court. See OCGA § 9-9-4 (a) (1). Contrary to DPSG's assertion, the issue of whether to confirm the arbitration award was ripe at the time it was decided.

Here, DPSG presented no substantive arguments to the Fulton Superior Court supporting the narrow statutorily recognized bases to vacate an arbitration award. To be clear, this does not deny a party losing in arbitration its right to petition the court to vacate the award; rather, it simply may not be able to do so in its preferred venue if its opponent files an application to confirm in a different statutorily permitted venue first.

While not binding on this Court, and while procedurally distinct in some aspects, we find persuasive the Eleventh Circuit's resolution of a similar issue under the Federal Arbitration Act ("FAA"). See *Berger v. Welsh*, 326 Ga. App. 290, 291 (1) (756 SE2d 545) (2014) ("Further, because our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes.") (citation and punctuation omitted). In the case of *McLaurin v. Terminix Intl. Co.*, 13 F4th 1232 (11th Cir. 2021), the McLaurins obtained a favorable arbitration award against Terminex and applied to confirm it. Rather than substantively oppose the application to confirm within the time frame provided by the

7

district court, Terminex waited until the end of the time allowed by statute to apply to vacate the award. Id. at 1239 (IV).

In interpreting the FAA, which contains the same application filing deadlines as our arbitration code,[1] the Eleventh Circuit noted that "the FAA does not impose an automatic three-month stay on confirmation. Instead, the statute explicitly authorizes a party to file a motion to confirm at any time during the year immediately following an arbitration award. This timeline does not change based on whether a losing party intends to challenge an award by filing its own motion." Id. at 1240 (IV) (A). The Eleventh Circuit further explained that "there is nothing in the text of the FAA to suggest that a prevailing party has to refrain during the three-month vacatur period from exercising the privilege conferred by [9 USCA] § 9 to move at any time within a year to confirm." (Citation and punctuation omitted.) Id. This is because "[a]s a practical matter, a motion to confirm puts the other party to [its] objections because [it] cannot litigate a later-filed motion to vacate if the earlier-filed motion to confirm succeeds." (Citation and punctuation omitted.) Id. at 1242 (IV) (B).

---

[1] See 9 USCA § § 9, 12.

Here, for whatever strategic reason, DPSG elected not to assert its arguments for vacatur in the Fulton Superior Court, and that court did not err in confirming the arbitration award.

2. Next, DPSG contends that the Fulton Superior Court erred in confirming the arbitration award despite the Claimants making no motion. We disagree.

Here, DPSG takes issue with the fact that the Claimants filed only a petition seeking confirmation and not a separate filing styled as a motion seeking the same relief. DPSG relies on the following language from OCGA § 9-9-4 (a) (2) for its proposition: "All applications shall be by motion and shall be heard in the manner provided by law and rule of court for the making or hearing of motions[.]" DPSG omits the remainder of the statutory language which is: ". . . provided that the motion shall be filed in the same manner as a complaint in a civil action." Id. Rather than requiring the filing of a redundant motion seeking identical relief as the petition, the arbitration code anticipates exactly what the Claimants did here. The Claimants were not required to file a separate document titled "motion" and the Fulton Superior Court did not err in confirming the award on this basis.

3. DPSG also contends that the Fulton Superior Court erred in confirming the award because the proper venue for the case was Gwinnett County. Again, we disagree.

DPSG claims that, because a civil action was initiated in Gwinnett County in 2017 wherein a motion to compel arbitration was filed, Gwinnett County was the only proper venue for the Claimants' petition. Pretermitting whether DPSG waived this argument, and pretermitting its inconsistency with the position taken by DPSG in the companion appeal, DPSG's argument has no merit. OCGA § 9-9-4 (a) (1) provides that "[a]ny application to the court under this part shall be made to the superior court of the county where venue lies, *unless the application is made in a pending court action, in which case it shall be made to the court hearing that action.*" (Emphasis supplied.) Here, there was no pending action in Gwinnett County as that case was voluntarily dismissed in 2018. The Fulton Superior Court did not err in confirming the arbitration award due to improper venue.

*Case No. A23A0537*

4. In two enumerations, DPSG contends that the Coweta Superior Court erred in dismissing its petition to vacate the arbitration award because procedural bars to having multiple causes of action pending concerning the same subject matter do not

10

apply to special statutory proceedings such as this and because the merits of its motion to vacate should have prevailed. We disagree.

At the time the Coweta Superior Court dismissed DPSG's petition to vacate, the Fulton Superior Court had already confirmed the arbitration award. Georgia law is clear that "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue *or which under the rules of law might have been put in issue* in the cause wherein the judgment was rendered until the judgment is reversed or set aside." (Emphasis supplied.) OCGA § 9-12-40.

"In order for the doctrine of res judicata to apply there are three prerequisites to which the situation must conform. They are: (1) identity of parties, including their privies; (2) identity of the cause of action; and (3) adjudication by a court of competent jurisdiction." (Citation and punctuation omitted.) *Crowe v. Congress Fin. Corp. (Southern)*, 196 Ga. App. 36, 39 (3) (395 SE2d 321) (1990). DPSG does not argue that the parties are different or that the Fulton Superior Court was not a court of competent jurisdiction.

With regard to identity of the cause of action, we find that it exists here. DPSG alleges that the confirmation petition in Fulton was not a "cause of action" because

11

it was a special statutory proceeding. DPSG, however, points to no authority for the proposition that a judgment in a special statutory proceeding cannot have a preclusive effect on the resolved claim being re-litigated.

DPSG also argues that the claims involved in the competing actions were not the same. The arbitration code provides that the superior court "shall confirm an award upon application of a party made within one year after its delivery to him, *unless the award is vacated* or modified by the court as provided in this part." (Emphasis supplied.) OCGA § 9-9-12. Accordingly, the issue of vacatur was present in the confirmation proceeding despite DPSG's failure to present any arguments supporting vacatur. Moreover, such a failure does not mean that the confirmation proceeding was not decided on the merits.

> As the wording of this statute intimates, an "adjudication on the merits" does not require that the litigation should be determined on the merits, in the moral or abstract sense of these words. It is sufficient that the status of the action was such that the parties might have had their suit thus disposed of, if they had properly presented and managed their respective cases. Thus, it is only where the merits were not and could not have been determined under a proper presentation and management of the case that res judicata is not a viable defense. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then the defense is valid.

12

(Citations, punctuation, and emphasis omitted.) *Piedmont Cotton Mills v. Woelper*, 269 Ga. 109, 110 (498 SE2d 255) (1998). It is not disputed that DPSG *could* have petitioned to vacate the award in the Fulton Superior Court. Notably,

> [t]he doctrine of res judicata may be applied where actions between the same parties in relation to the same subject matter are pending at the same time, and a judgment is rendered in one of such actions. It is immaterial whether the action in which the judgment is interposed as an estoppel was commenced before or after the action in which the adjudication was made.

(Punctuation omitted.) *Darling Stores Corp. v. Beatus*, 199 Ga. 215 (4) (33 SE2d 701) (1945). In light of res judicata precluding the vacatur of the arbitration award, we need not reach the merits of DPSG's arguments in support of vacatur.

5. Lastly, DPSG claims that the Coweta Superior Court erred in dismissing its claim for declaratory judgment. We disagree.

DPSG sought a declaration from the Coweta Superior Court that "no class B stock was authorized to exist in [DPSG] as of December 10, 2018 and that [the Claimants] do not own any equity interest in [DPSG]." The arbitration award in this case, however, found the Claimants to be Class B stockholders and determined their respective ownership interests. This finding was part of the award which was

13

confirmed by the Fulton Superior Court, and thus, for the reasons described above in Division 4, res judicata precludes re-litigation of this claim.

In summary, OCGA §§ 9-9-12 and 9-9-13 are not as inconsistent as DPSG alleges. Nothing in this opinion precludes a party from exercising its statutorily provided right to timely petition to vacate an arbitration award even if the opposing party petitions to confirm the award first because the law permits a losing party's motion to vacate to be brought in the same action as the confirmation petition.

*Judgments affirmed. Miller, P. J., and Mercier, J., concur.*