## A07A1095. MATRIX FINANCIAL SERVICES, INC. v. DEAN.
### (655 SE2d 290)

MILLER, Judge.

Matrix Financial Services, Inc. d/b/a Matrix Capital Bank ("Matrix") appeals from an order of the trial court (i) denying its motion to enforce a settlement agreement between it and Willie Grady Dean and (ii) extending a temporary restraining order ("TRO"), which bars it from proceeding with a dispossessory action against Dean. Matrix claims that this order constitutes an abuse of discretion and error as a matter of law. For the reasons set forth below, we disagree and affirm.[1]

On appeal from a trial court's order on a motion to enforce a settlement agreement, we apply a de novo standard of review, "view[ing] the evidence in a light most favorable to the nonmoving party." *DeRossett Enterprises v. Gen. Elec. Capital Corp.*, 275 Ga. App. 728 (621 SE2d 755) (2005). The movant must demonstrate that the evidence of record is insufficient to create a jury issue on at least one essential element of the dispute. Id.

Viewed in the light most favorable to Dean, the evidence shows that on July 8, 1993, Dean obtained a home loan in the amount of $36,600 from South Georgia Equity Corporation ("SGE"). To secure the loan, Dean executed and delivered to SGE a secured promissory note to his residence in Meriwether County (the "Property"). SGE subsequently sold that promissory note to Accent Mortgage Services, Inc. ("Accent"), which, in 1998, assigned the note to Matrix. Although, as a result of that assignment, Matrix became the holder of the original loan documents, a question subsequently arose as to whether it had received them from a holder in due course.

In 2004, following Dean's failure to make any payment on the loan for approximately six years, Matrix foreclosed on the Property. It thereafter initiated dispossessory proceedings against Dean in the Magistrate Court of Meriwether County. In that proceeding, Dean, while represented by counsel, entered into the settlement agreement currently at issue. Under the terms of that agreement, Matrix agreed to reduce the amount Dean owed under the loan and to stay the dispossessory action. In exchange, Dean agreed to tender $70,000 within 30 days of the date of the agreement and waived

---

[1] Dean's motion to dismiss Matrix's appeal for failure to file an application for interlocutory appeal of the underlying order is hereby denied. That part of the trial court's order indefinitely extending its TRO against Matrix is the equivalent of a judgment granting an interlocutory injunction and is directly appealable. OCGA § 5-6-34 (a) (4); see, e.g., *Spell v. Blalock*, 243 Ga. 459 (254 SE2d 842) (1979).

all defenses and counterclaims against [Matrix], or its agents and assigns, as to any previous, present, or future actions that concern[ ] the [Property] or this case, including any pending actions, or any other actions that could have been pursued or that can be pursued in the future as against [Matrix] . . . or its agents and assigns, known or unknown at this time.

Dean made no payment under the settlement agreement, and instead instituted the current action, seeking, inter alia, (i) equitable relief rescinding Matrix's foreclosure sale of the Property, and (ii) an ex parte TRO allowing him to retain possession of the Property pending trial. Dean's claims were based, in part, on the allegation that Matrix lacked a perfected security interest in the loan documents in issue, barring its foreclosure of the Property. Matrix answered and asserted a counterclaim, seeking to enforce the settlement agreement.

Matrix subsequently filed a motion for equitable relief, seeking enforcement of the settlement agreement and dissolution of the TRO. The trial court denied that motion, finding that there existed questions of material fact as to the enforceability of the settlement agreement. These questions arose from the possibility that Matrix did not hold a perfected security interest in the Property and therefore did not have the legal right to foreclose on the same.

In addition to the representations of counsel at its motion hearing, it is apparent that the trial court relied on two separate, but related, pieces of evidence. The first was a decision of a federal bankruptcy court, issued as a part of bankruptcy proceedings filed by SGE. Those proceedings revealed that SGE had "double booked" its loans by selling individual loans to multiple investors while also selling them to consumer lending companies, such as Accent. *In re SGE Mtg. Funding Corp.*, 278 BR 653 (Bankr. M.D. Ga. 2001). As a result, the bankruptcy court was required to determine whether certain entities were holders in due course of the promissory notes or other documents securing those loans. Applying the Georgia Uniform Commercial Code, the bankruptcy court held that if an investor entity that had originally funded SGE possessed any original loan documents, those documents gave them perfected security interests in the underlying property. Id. at 662. The bankruptcy court declined to reach such a holding as to the lending companies, such as Accent, which purchased loans from SGE, finding "that issues of material fact exist as to whether [such companies] took the notes which they purchased from SGE in good faith and without notice of default or defense." Id. at 664.

The decision of the bankruptcy court raised the possibility that Accent was not a good faith purchaser of Dean's loan, and therefore did not hold a perfected security interest in the Property. Accordingly, because Matrix had been assigned the loan by Accent, it also may not have had a perfected security interest in the Property, and without such an interest it did not have the legal right to foreclose.

The documents that Matrix filed in the real property records of Meriwether County for the purpose of recording its alleged security interest in the Property cast a further shadow over the validity of that interest. Specifically, those documents show that Accent purportedly assigned Dean's loan to Matrix three days before Accent received the assignment from SGE.

Given the foregoing, the trial court entered its denial of Matrix's motion. This appeal followed.

1. Matrix contends that the trial court erred in denying its motion to enforce the settlement agreement, because by entering that agreement Dean waived any defenses he might have had relating to Matrix's right to foreclose on the Property. We nevertheless affirm the trial court's ruling, finding that there exist material issues of fact as to whether Matrix acted in good faith and with clean hands. In this instance, its bad faith would operate to void the consideration Matrix gave for the agreement and its unclean hands would bar it from the equitable relief that it seeks.

(a) It is important to note that, under Georgia law, the mere fact that Matrix's right to foreclose on the property has been called into question would normally be insufficient to void the agreement for lack of consideration. "Where parties enter into an agreement compromising and settling a claim about which there is a bona fide dispute, they are bound by the agreement, *even though one of the contentions thereafter appears to be without foundation in law.*" (Citation and punctuation omitted; emphasis in original.) *Sellers Bros., Inc. v. Imperial Flowers*, 232 Ga. App. 687, 690 (5) (503 SE2d 573) (1998). See also *Capitol Materials v. Kellogg & Kimsey, Inc.*, 242 Ga. App. 584, 585 (1) (530 SE2d 488) (2000) ("Forbearance to prosecute a legal claim and the compromise of a doubtful right are both sufficient consideration to support a contract.") (footnote omitted). Further, if a settlement is to be deemed unenforceable as fraudulently procured, such a claim cannot be premised upon alleged misrepresentations, that even if made, would have been revealed by a review of the county land records. *Dyer v. Honea*, 252 Ga. App. 735, 740 (3) (557 SE2d 20) (2001).

While the law recognizes that the compromise of a doubtful claim will support a settlement agreement, that claim must be asserted in good faith. See Corbin on Contracts, § 140 (2005) ("The most generally prevailing, and probably the most satisfactory view is that

forbearance [of a doubtful claim] is sufficient if there is any reasonable ground for the claimant's belief that it is just to try to enforce his claim."); Restatement (Second) of Contracts, § 74, Comment b (1981). As one court has explained:

> Although the courts will not inquire into the validity of a claim which was compromised in good faith, there must generally be reasonable grounds for a belief in order for the court to be convinced that the belief was honestly entertained by the person who asserted it. Sufficient consideration requires more than the bald assertion by a claimant who has a claim, and to the extent that the validity or invalidity of a claim has a bearing upon whether there were reasonable grounds for believing in its possible validity, evidence of the validity or invalidity of a claim may be relevant to the issue of good faith. 15A Am.Jur.2d *Compromise and Settlement* § 17, at 790.

*Dyer v. Nat. By-Products*, 380 NW2d 732, 735-736 (Iowa 1986).

Here, questions of fact exist as to whether Matrix acted in good faith in foreclosing on the Property. Those questions include (i) whether Matrix took assignment of the loan documents in good faith and without notice of default or defense and (ii) whether Matrix foreclosed on the Property without regard to whether it had a legal right to do so. With respect to this latter question, we note that Matrix's attorney freely conceded to the trial court that issues may exist as to whether Matrix had a perfected security interest in the Property. Yet, it appears that Matrix proceeded with the foreclosure despite such knowledge.

(b) These same factual questions are also relevant to the question of whether Matrix is entitled to the relief which it now seeks.

That relief — specific performance of the settlement agreement — is equitable in nature. See *Harper v. Whitehead*, 33 Ga. 138, 145 (6) (1862); see also *Walls v. Walls*, 260 Ga. App. 673 (580 SE2d 564) (2003). The doctrine of unclean hands, however, may bar Matrix from receiving such equitable relief. *Scott v. Perkins*, 230 Ga. App. 496 (497 SE2d 21) (1998).

Under that doctrine, "[h]e who would have equity must do equity and must give effect to all equitable rights of the other party respecting the subject matter of the action." OCGA § 23-1-10. "The unclean-hands maxim [refers] to an inequity which infects the cause of action so that to entertain it would be violative of conscience." (Citation and punctuation omitted.) *Partain v. Maddox*, 227 Ga. 623, 637 (4) (a) (182 SE2d 450) (1971). To assert the doctrine successfully, a party must demonstrate that the wrongdoing is directly related to the claim

against which unclean hands is asserted. *Adams v. Crowell*, 157 Ga. App. 576, 577 (2) (278 SE2d 151) (1981); see also *Keystone Driller Co. v. Gen. Excavator Co.*, 290 U. S. 240, 245 (54 SC 146, 78 LE 293) (1933).

Absent an abuse of discretion, the unclean hands maxim may be enforced sua sponte. *Scott*, supra, 233 Ga. App. at 496-497. Given the foregoing, no abuse of discretion resulted upon the trial court's refusal to enforce the settlement agreement under the doctrine of unclean hands. Id.; *DeRossett Enterprises*, supra, 275 Ga. App. at 728. However, further proceedings below are necessary — this to allow for a determination of Matrix's knowledge regarding the validity of its security interest in the Property and, in turn, its entitlement to enforcement of the settlement agreement. If Matrix acted in good faith and with clean hands, any delay merely maintains the status quo while ensuring fairness to Dean who faces the loss of his home of 28 years.

2. We also disagree with Matrix's assertion that the trial court erred in extending the TRO that prevents it from proceeding with its dispossessory action against Dean.

We will not disturb a trial court's decision to grant or deny an interlocutory injunction absent a manifest abuse of discretion. *Covington v. D. L. Pimper Group*, 248 Ga. App. 265, 267 (546 SE2d 37) (2001). Refusing to allow a mortgagee to evict a property owner until it can be determined whether the mortgagee has the right to do so either at equity or at law does not constitute such an abuse. See *R. D. Brown Contractors v. Bd. of Ed. of Columbia County*, 280 Ga. 210, 212 (626 SE2d 471) (2006) ("The possibility that the party obtaining a preliminary injunction may not win on the merits at the trial does not determine the propriety or validity of the trial court's granting the preliminary injunction.") (citations, punctuation and emphasis omitted).

In closing, we note that this litigation could well have been prevented if Georgia law provided any kind of procedural oversight — either judicial or administrative — for foreclosure proceedings. The validity or invalidity of Matrix's security interest in the Property should have been resolved as part of the foreclosure proceedings, prior to the negotiation of any settlement agreement. Unfortunately, our legislature has declined to provide such procedural safeguards to homeowners or to place any meaningful restrictions on mortgage lenders. In light of the current mortgage crisis and high foreclosure rate resulting from the practices of the subprime lending market, we urge the General Assembly to address this important issue.

For the reasons set forth above, we affirm the judgment of the trial court denying Matrix's motion to enforce the settlement agreement and temporarily enjoining Matrix from proceeding with its

dispossessory action against Dean and remand the case with direction for proceedings consistent with this opinion.

*Judgment affirmed and case remanded with direction. Barnes, C. J., and Smith, P. J., concur in the judgment only.*

DECIDED NOVEMBER 30, 2007.

*Jason H. Coffman*, for appellant.
*Samuel J. Brantley*, for appellee.