[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15448
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00159-JRH-WLB


SOHAIL M. ABDULLA,

                                                      Plaintiff - Appellant,

versus

SCOTT J. KLOSINSKI,
KLOSINSKI OVERSTREET, LLP,
JOHNSTON, WILKIN & WILLIAMS,

                                                      Defendants - Appellees,

THE ESTATE OF WILLIAM J. WILLIAMS,

                                                      Defendant.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(July 10, 2013)

Before CARNES, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Sohail Abdulla appeals the district court's grant of summary judgment in favor of attorney Scott Klosinski and the law firms of Klosinski Overstreet, LLP, and Johnston, Wilkin & Williams. Abdulla contends that Klosinski and William J. Williams committed legal malpractice and breached their fiduciary duties to him by advising him to sign a personal guaranty for his business and by allowing default judgment to be entered against him while he was out of the country.

I.

Abdulla owned and operated Sportsman's Link, Inc., a sporting and outdoor equipment store in Augusta, Georgia. Sportsman's Link received $460,650 worth of merchandise from Henry's Tackle, one of its vendors. Sportsman's Link never paid for that merchandise, and in December 2006 Henry's Tackle sued Sportsman's Link to recover the amount it was owed.

Abdulla and Sportsman's Link retained attorney William J. Williams, a partner with Johnston, Wilkin & Williams, to represent them in the case. Because Sportsman's Link's sales and profits had dropped significantly, Williams advised Abdulla that he should consider petitioning for Chapter 11 bankruptcy. Williams referred Abdulla to Scott Klosinski, a partner with Klosinski Overstreet, LLP, to represent Sportsman's Link in the bankruptcy proceedings. After Abdulla

2

discussed the matter with Klosinski and Williams, Sportsman's Link filed a Chapter 11 petition in March 2007, which stayed the lawsuit filed by Henry's Tackle.

In June 2007 Henry's Tackle filed an application for the appointment of a trustee to take over Sportsman's Link's property and operations. In the alternative, it asked the court to lift the bankruptcy stay so that it could file a lawsuit to pierce the corporate veil and hold Abdulla personally liable for Sportsman's Link's debts. In the motion, it alleged that Abdulla had used Sportsman's Link "as a sham to purchase and leverage his [individual] assets" by commingling personal and corporate funds and withdrawing corporate funds for his individual benefit to the detriment of creditors.

Because the appointment of a trustee would have ousted Abdulla from control of Sportsman's Link's operation and could have resulted in the liquidation of its assets, Klosinski asked Henry's Tackle if it was willing to withdraw the trustee motion. Henry's Tackle indicated that the motion would be withdrawn if certain conditions were met, including the execution of a personal guaranty by Abdulla. Klosinski forwarded the proposed conditions to Abdulla and Williams. Williams advised Abdulla to sign the guaranty.

In July 2007 Abdulla executed a personal guaranty of Sportsman's Link's debt in favor of Henry's Tackle in the amount of $547,219.49. The guaranty

3

provided that Henry's Tackle could collect the debt in the event of a default, which was defined to include the conversion of the Chapter 11 bankruptcy into a Chapter 7 proceeding. The guaranty also provided that "[a]ll notices, requests, demands, directions and other communications" required under the guaranty and directed to Abdulla should also be addressed to both Klosinski and Williams. The guaranty included a waiver-of-defenses clause which stated that the guaranty "is valid and binding according to its terms, subject to no defense, counterclaim, set-off or objection of any kind."

In June 2008 the United States Trustee filed a motion to convert Sportsman's Link's Chapter 11 bankruptcy case to a Chapter 7 proceeding, which the bankruptcy court granted. Abdulla moved for reconsideration, offering to transfer $1,000,000 of his personal assets to the corporation, but the court denied his motion. Because the Chapter 11 bankruptcy was converted to a Chapter 7 proceeding, Abdulla became liable under the personal guaranty for Sportsman's Link's debts to Henry's Tackle.

In August 2008 Henry's Tackle filed a lawsuit against Abdulla to enforce the guaranty. Process was served on Klosinski and Williams, as required by the terms of the guaranty. Henry's Tackle tried to serve Abdulla personally, but could not locate him because he was in Pakistan at the time. On August 20, 2008, Klosinski forwarded the complaint to Abdulla by e-mail and attached a letter

4

telling him that Klosinski Overstreet would not be representing him in the case and advising him to contact a lawyer to defend him "as soon as possible." Williams did not forward the complaint to Abdulla.

Abdulla received Klosinski's e-mail, but did not answer the complaint. The case automatically entered default, and on October 30, 2008, default judgment was entered in favor of Henry's Tackle in the amount of $684,024.31. In late October or early November, Abdulla asked Williams to represent him in the case. Williams agreed, filed an answer, and moved to set aside the default judgment in November 2008. The court denied that motion and appointed a receiver to sell Abdulla's property to satisfy the judgment.

In 2010 Abdulla brought this action against Klosinski and the Estate of William Williams,[1] alleging legal malpractice and breach of fiduciary duties in connection with his execution of the guaranty and the entry of default judgment against him.[2] Klosinski's and Williams' law firms were named as defendants under the theory of respondeat superior.

After discovery, Klosinski and the two law firms filed motions for summary judgment, which the district court granted. The court first evaluated Abdulla's claims related to his execution of the guaranty. It noted that he had stated a claim

---

[1] Williams died before the commencement of this action.
[2] The parties later filed a joint motion to dismiss the Estate of William Williams, and the district court granted that motion.

5

for legal malpractice only and not for breach of fiduciary duty with respect to his execution of the guaranty, and he has not challenged that ruling on appeal. The court then concluded that Abdulla could not recover from Klosinski or his law firm because no reasonable jury could conclude that Klosinski represented Abdulla in his individual capacity. The court also concluded that Abdulla could not recover from Williams' law firm because the record does not support an inference that Williams violated his duty of ordinary care under the circumstances. The court reasoned that Williams could not be liable to Abdulla under Georgia law because his advice to Abdulla to sign the guaranty constituted an honest exercise of professional judgment.

The court next considered Abdulla's claims related to the entry of default judgment against him. The court recognized that Abdulla had stated a claim for both legal malpractice and breach of fiduciary duty with respect to the entry of default judgment against him because Klosinski and Williams were registered service agents for Abdulla. The court then noted that in order to recover for legal malpractice or breach of fiduciary duty, Abdulla must show that any wrongdoing by his attorneys was the proximate cause of his damages. The court reasoned that because the guaranty contained a waiver-of-defenses clause, he could not have prevailed in the litigation even if the complaint had been timely answered. It rejected Abdulla's arguments that the guaranty was unenforceable on the grounds

6

of lack of consideration, duress, and unconscionability.  Because Abdulla could not have prevailed in the action to enforce the guaranty, any alleged wrongdoing by the attorneys did not proximately cause his damages.  Abdulla has appealed the district court's grant of summary judgment.

## II.

We review de novo a district court's grant of summary judgment, "viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party."  Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1254 (11th Cir. 2012). "Summary judgment is proper only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id. (quotation marks omitted).

## A.

Abdulla contends that the district court erred in concluding that his evidence was insufficient to allow a reasonable jury to conclude that Klosinski represented him in his individual capacity.  "The relationship of attorney-client may be expressly created by written contract, or may be inferred from the conduct of the parties."  Huddleston v. State, 376 S.E.2d 683, 684 (Ga. 1989).  "[T]he basic question in regard to the formation of the attorney-client relationship is whether it has been sufficiently established that advice or assistance of the attorney is both sought and received in matters pertinent to his profession."  Id.

There is no question that Klosinski was retained to represent Sportsman's Link. Abdulla argues that Klosinski also represented him in his individual capacity because he personally paid the retainer fee to Klosinski. Although the fee might have come from Abdulla's personal funds, the written engagement letter makes clear that Abdulla sought Klosinski's advice "regarding assistance in filing a Chapter 11 proceeding," "[o]n behalf of Sportsman's Link." See Addley v. Beizer, 423 S.E.2d 398, 400 (Ga. Ct. App. 1992) ("One who serves as attorney for a corporation does not, by virtue of that fact, serve as attorney for the officers of the corporation in their personal capacity . . . .").

Abdulla also argues that Klosinski represented him in his personal capacity because Klosinski was involved in the negotiation of the personal guaranty and explained its terms to him. It is true that Klosinski discussed with Henry's Tackle the possibility of having the trustee motion withdrawn. It is also true that Klosinski forwarded to Abdulla the terms of Henry's Tackle's offer in exchange for withdrawing its motion. Those actions, however, were consistent with Klosinski's undisputed role as counsel for Sportsman's Link. The trustee motion was filed in Sportsman's Link's bankruptcy case and sought the appointment of a trustee to assume control of the corporation's assets or the removal of the bankruptcy stay so that Henry's Tackle could sue to recover the money it was owed. It was therefore within the scope of Klosinski's authority as Sportsman's

8

Link's bankruptcy attorney to discuss with Henry's Tackle the possibility of withdrawing the trustee motion. We agree with the district court that the evidence shows that after forwarding the proposed terms of withdrawal to Abdulla, "Klosinski had no further involvement in the Guaranty negotiations," and by Abdulla's own admission, "Klosinski offered no advice regarding [the] execution" of the guaranty.

Abdulla further argues that because Klosinski represented him, along with Sportsman's Link, in an unrelated tenancy dispute, Klosinski also represented him in the execution of the guaranty. Specifically, Abdulla claims in his appellate brief that he signed the guaranty only "because his attorneys told him they were going to settle the claims against the landlord . . . ." The retainer agreement for the tenancy dispute stated that the representation shall be for "the case of Sportsman's Link, Inc. (Sohail Abdulla) v. U.S. Properties Group (and/or affiliated entities) . . . or under such other name as this cause of action may become known." An agreement to represent Abdulla in a separate case does not mean that Klosinski represented him in the execution of the guaranty. Although Abdulla claims in his appellate brief that "his attorneys" told him they would settle the landlord claims if he signed the guaranty, he admitted in his deposition that Klosinski offered no advice on the execution of the guaranty.

9

B.

Abdulla next contends that the district court erred in concluding that no reasonable jury could find that Williams breached the duty of ordinary care in advising him to execute the guaranty.  He argues that the district court ignored the conclusions of John Freeman, the expert he offered on the standard of care in a legal malpractice case.  But the district court did address Freeman's conclusions, noting that Freeman "has opined that Williams failed to properly assess and communicate to [Abdulla] the risks presented by the Trustee Motion and the Guaranty."  The court then rejected Freeman's conclusions, noting that Abdulla had "acknowledged that he read the Guaranty, assessed the viability of a piercing the corporate veil claim, and understood that by executing the Guaranty he would become personally liable."  The court also noted that Abdulla is a sophisticated businessman who has owned and operated other businesses, gone through an earlier bankruptcy reorganization, and personally guaranteed corporate debt on at least one other occasion.

We agree with the district court that notwithstanding Freeman's conclusions, "the record shows that [Abdulla] was apprised of the risks presented by the Trustee Motion as well as the personal interests served by, and consequences of, the Guaranty's execution."  See Mosera v. Davis, 701 S.E.2d 864, 869 (Ga. Ct. App. 2010) (affirming summary judgment in favor of attorneys on plaintiff's

10

malpractice claim because the record showed that, in spite of plaintiff's expert's conclusion, the attorneys "advised [plaintiff] of the consequences of failing to file a deed to secure debt; that [plaintiff] understood the risks involved; and that this was the best deal [the attorneys] could obtain for him, given [the opposing party's] demands and [plaintiff's] desire to settle").

Abdulla also contends that he "had no reason to sign the personal guaranty" because he would not have been personally liable for Sportsman's Link's debts had the trustee motion been granted. He points out that in Georgia, a corporation must be insolvent before the corporate veil can be pierced, and he notes that Sportsman's Link was not insolvent in June 2007 when Henry's Tackle asked the bankruptcy court to lift the bankruptcy stay. Thus, he argues, Henry's Tackle would have surely failed in its attempt to pierce the corporate veil.

Even if we assume, without deciding, that Abdulla faced no risk of personal liability as a result of the trustee motion, there was still a real possibility, given Abdulla's documented history of commingling personal and business funds, that a trustee would have been appointed to take control of the company. If that had happened, Abdulla would have been ousted from control of his company, and the company's assets could have been liquidated. Because of that possibility, it was reasonable for Williams to advise Abdulla to sign the personal guaranty, and the district court correctly decided that Williams could not be liable to Abdulla under

11

Georgia law because his advice to Abdulla constituted an honest exercise of professional judgment.  See Mosera, 701 S.E.2d at 869 ("[T]here can be no liability for acts and omissions by an attorney in the conduct of litigation which are based on an honest exercise of professional judgment.")

C.

Abdulla contends that the district court erred in concluding that any wrongdoing by Klosinski or Williams in connection with Henry's Tackle's suit to enforce the guaranty was not the proximate cause of his damages.  Abdulla asserts that the guaranty's waiver-of-defenses clause was not enforceable because it was not supported by consideration.

The compromise of a doubtful claim qualifies as consideration as long as the claim was asserted in good faith.  See Matrix Fin. Servs., Inc. v. Dean, 655 S.E.2d 290, 293–94.  "Although the courts will not inquire into the validity of a claim which was compromised in good faith, there must generally be reasonable grounds for a belief in order for the court to be convinced that the belief was honestly entertained . . . ."  Id. at 294.

Abdulla argues that the trustee motion was not filed in good faith.  We disagree.  Henry's Tackle sought the appointment of a trustee to assume control of Sportsman's Link under 11 U.S.C. § 1104(a), which allows a trustee to be appointed "for cause, including fraud, dishonesty, incompetence, or gross

mismanagement of the affairs of the debtor," or "if such appointment is in the interests of creditors."  11 U.S.C. § 1104(a)(1)–(2).  As the district court noted, "[t]he catalogue of [Abdulla]'s personal transfers in and out of the corporation is long, and the corporation's financial situation was quickly deteriorating when the Trustee Motion was filed."  That constitutes reasonable grounds to seek the appointment of a trustee under 11 U.S.C. § 1104(a).[3]

Abdulla also argues that the guaranty was not enforceable because it was unconscionable.  "An unconscionable contract is one abhorrent to good morals and conscience where one of the parties takes a fraudulent advantage of another, an agreement that no sane person not acting under a delusion would make and that no honest person would take advantage of."  Mallen v. Mallen, 622 S.E.2d 812, 816–17 (Ga. 2005) (quotation marks and alterations omitted).  We agree with the district court that the terms of the guaranty were not unconscionable.  See Ramirez v. Golden, 478 S.E.2d 430, 431 (Ga. Ct. App. 1996) ("[A] guarantor may consent in advance to a course of conduct which would otherwise result in his discharge. This includes waiving defenses which otherwise would be available to a guarantor.") (citation omitted).

---

[3] Abdulla also argues that the guaranty was not supported by consideration because he "got absolutely nothing for exposing himself to more than half a million dollars of debt . . . ." "Consideration need not be a benefit accruing to the promisor, but may be a benefit accruing to another."  Fisher v. Toombs Cty. Nursing Home, 479 S.E.2d 180, 183–84 (Ga. Ct. App. 1996). Regardless of whether Abdulla received any personal benefit from executing the guaranty, his corporation did benefit from the withdrawal of the trustee motion.

13

Abdulla further argues that the guaranty was void because he could assert the defense of duress. He is wrong. "[W]hen the signer of an agreement is sophisticated in business matters and has access to and in fact obtains advice of counsel, the defense of duress is not available to void the contract." Hampton Island, LLC v. HAOP, LLC, 702 S.E.2d 770, 773 (Ga. Ct. App. 2010) (emphasis omitted). Abdulla would have been liable to Henry's Tackle under the personal guaranty even if the complaint had been timely answered. Core LaVista, LLC v. Cumming, 709 S.E.2d 336, 341 (Ga. Ct. App. 2011) ("[B]ecause Delonga failed to assert any defense based upon an alleged incompetency to enter into a contract at the time he executed the guaranty, and because he failed to show that the guaranty's broad waiver of defenses was prohibited by statute or public policy, he is bound thereby."). He cannot show that any alleged wrongdoing by his attorneys proximately caused his damages.

**AFFIRMED.**

14