**FIRST DIVISION
BARNES, P. J.,
MERCIER and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**October 30, 2019**

# In the Court of Appeals of Georgia

A19A1592. ROLLINS v. SMITH et al.

MERCIER, Judge.

Danielle Rollins ("Rollins") filed an action for "common law negligence and professional malpractice" and breach of contract against the attorneys and law firms who represented her in a divorce proceeding against her former husband, Glen Rollins ("ex-husband"). Rollins alleged that the attorneys and law firms - Alvah Smith, Barry McGough, Levine Smith Snider & Wilson, LLC, and Warner Bates & McGough, PC (collectively, the "law defendants") - committed legal malpractice and breach of contract by failing to advise her, by failing to adequately protect her interests, and by pressuring her to agree to a Memorandum of Settlement that was

deficient in various respects. Rollins sought general, compensatory, special and punitive damages, as well as attorney fees.[1]

The law defendants filed motions for summary judgment. After the court held a hearing on the motions but before it entered a ruling thereon, Rollins filed a "Dismissal Without Prejudice" in the action. The law defendants moved to strike Rollins's dismissal on the ground that Rollins was precluded from dismissing her case without prejudice after the court announced its intention to grant summary judgment against her. The trial court granted the law defendants' motions to strike the dismissal and for summary judgment. Rollins appeals. For the reasons that follow, we affirm the order striking the dismissal, and we reverse in part and affirm in part the grant of summary judgment.

1. Rollins contends that the trial court erred by striking her dismissal when she filed it without having actual knowledge of the court's summary judgment decision and before the court entered its ruling. The contention is without merit.

"To the extent our analysis of the trial court's order involves mixed questions of law and fact, we review the court's factual findings for clear error and the

---

[1] Rollins amended the complaint to add a claim for "Disgorgement of Fees," wherein she prayed that the law defendants forfeit all attorney fees charged in connection with their representation of her.

2

accompanying legal issues de novo." *First Media Group v. Doe*, 312 Ga. App. 84, 85 (717 SE2d 277) (2011) (citation omitted).

A plaintiff cannot voluntarily dismiss a case unilaterally after the court has expressed an intention to rule in favor of the defendant. *Dillard Land Investments v. Fulton County*, 295 Ga. 515, 520 (761 SE2d 282) (2014). A statement by the trial court that summary judgment "likely would be granted" also precludes the filing of a voluntary dismissal. *Leary v. Julian*, 225 Ga. App. 472, 474 (1) (484 SE2d 75) (1997) (citation and punctuation omitted).

In this case, the court held a hearing on the motions for summary judgment on May 22, 2018. The trial court did not announce a ruling at that time.[2] On June 12, 2018, the trial court's staff attorney sent an email from the trial court to counsel for all parties directing counsel for the law defendants "to draft a proposed order granting your motions for summary judgment including analysis of law and fact." On June 14, 2018, before the trial court entered an order on the summary judgment motions, Rollins filed a "Dismissal Without Prejudice," purporting to unilaterally dismiss the action. On June 15, 2018, the law defendants filed a proposed order granting their

---

[2] While apparently no complete hearing transcript or acceptable substitute therefor is included in the appellate record, Rollins states and the law defendants do not dispute that the trial court did not announce its ruling at the hearing.

motions for summary judgment. On June 20, 2018, the law defendants filed a "Joint Motion to Strike Plaintiff's Defective Notice of Voluntary Dismissal," arguing that Rollins was precluded from unilaterally dismissing the action without prejudice after the trial court had expressed its intention to grant summary judgment against her.

In its order striking the dismissal, the trial court stated:

After considering the entire record in this case, the Court finds that it clearly communicated its intent to grant Defendants' Motions for Summary Judgment to both parties in this action prior to Plaintiff's attempt to file a dismissal.

We agree that the trial court expressed such an intention. As detailed above, the court's staff attorney had sent an email from the court to all parties (including counsel for Rollins) directing only counsel for the law defendants to prepare and submit a proposed order; the only order requested was one *granting* the motions for summary judgment. In addition, the trial court expressly found in its order striking the dismissal that it had clearly communicated its intention to grant the motions for summary judgment to Rollins before she attempted to dismiss the action. Thus, Rollins has not demonstrated that the trial court's factual determination that it had communicated to her its intention before her filing was clearly erroneous or that the trial court made an error of law by striking her dismissal. See generally *First Media Group*, supra at 85.

4

Rollins's reliance on *First Media Group* as requiring reversal in this case is misplaced. In *First Media Group*, the trial court had not communicated to the plaintiff or her counsel its request to the defendant for a proposed order granting the defendant's summary judgment motion. Id. at 84. Further, the trial court in *First Media Group* issued an order expressly finding that it had *not* communicated any intended disposition to the plaintiff or her counsel and that the plaintiff lacked actual knowledge of any decision by the trial court before filing the dismissal. Id. at 85. The court in the instant case made express findings to the contrary. Given the distinctions between the cases, the trial court here did not err by granting the motion to strike Rollins's dismissal.

2. Rollins contends that the trial court erred by granting the law defendants' motions for summary judgment on her legal malpractice claim when genuine issues of material fact remain as to whether the law defendants breached the standard of care and whether those breaches were the proximate cause of her damages.[3] We hold that

---

[3] We refer herein to Rollins's claims collectively as a "legal malpractice claim" because her professional malpractice claim as alleged encompasses each of the claims she has asserted against the law defendants. See generally *McMann v. Mockler*, 233 Ga. App. 279, 281-282 (3) (503 SE2d 894) (1998) (appellant's claims against attorney for breach of contract and breach of fiduciary duty were merely duplications of her malpractice claim); *Plumlee v. Davis*, 221 Ga. App. 848, 851-852 (2) (473 SE2d 510) (1996).

as to one aspect of Rollins's legal malpractice claim (involving a credit for attorney fees paid for the ex-husband from a joint account), the law defendants are not entitled to summary judgment. As to the remaining aspects of the claim, however, summary judgment is proper.

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). "A defendant may do this by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case." *Szurovy v. Olderman*, 243 Ga. App. 449, 452 (530 SE2d 783) (2000) (citation omitted). "On appeal from a grant of summary judgment, we apply a de novo standard of review and view the evidence in the light most favorable to the nonmovant." *Hayek v. Chastain Park Condo. Assn.*, 329 Ga. App. 164 (764 SE2d 183) (2014) (citation omitted).

"To prevail on a legal malpractice claim, a client must prove that (1) [s]he employed the defendant attorney; (2) the attorney failed to exercise ordinary care, skill, and diligence; and (3) this failure was the proximate cause of damages to the client." *Mosera v. Davis*, 306 Ga. App. 226, 230 (2) (701 SE2d 864) (2010). "With respect to the 'ordinary care, skill and diligence' element, the law imposes upon

6

persons performing professional services the duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by their respective professions under similar conditions and like surrounding circumstances." *Allen v. Lefkoff, Duncan, Grimes & Dermer*, 265 Ga. 374, 375 (2) (a) (453 SE2d 719) (1995) (citations, punctuation and emphasis omitted).

> Proximate cause in a malpractice action requires a plaintiff to demonstrate that but for the [attorney's] error, the outcome would have been different; any lesser requirement would invite speculation and conjecture. These requirements also pertain to malpractice suits arising from settlement negotiations.

*Szurovy*, supra (citations and punctuation omitted). "The defendant attorney is entitled to summary judgment if he [or she] shows that there is an absence of proof adduced by the client on the issue of proximate cause." *Mosera*, supra at 230-231 (2) (citation omitted).

The trial court granted summary judgment to the law defendants based primarily on a finding that Rollins cannot establish proximate cause and damages on her claims. It is undisputed that the law defendants represented Rollins in the divorce action, so the first element of the test is not at issue in this appeal.

7

Rollins contends that there is evidence that the law defendants breached the standard of care and that those breaches proximately caused her harm. Specifically, she asserts that the law defendants: (a) failed to comply with the trial court's temporary order in the divorce action that required Rollins to receive credit for fees paid to the ex-husband's attorneys from the couple's joint account; (b) failed to advise her of the tax consequences associated with the settlement; (c) failed to secure an equitable division of the marital assets; and (d) failed to have the ex-husband pay for her legal fees in the divorce case.

> Because the second element of the test involves answering the question whether certain professional standards have been met, except in clear and palpable cases[,] . . . expert testimony is necessary to establish the parameters of acceptable professional conduct for an attorney, a significant deviation from which would constitute malpractice. This does not mean, however, that expert testimony would also be appropriate with respect to the third and final element of the test, causation. In order to establish the final element, the plaintiff must show that, but for the attorney's negligence in the underlying case, the plaintiff would have prevailed.

*Leibel v. Johnson*, 291 Ga. 180, 181-182 (728 SE2d 554) (2012) (citations and punctuation omitted). Competing expert testimony regarding whether an attorney's actions fell below the standard of care constitutes a genuine issue of material fact that

8

must be resolved by a jury. See *Tucker v. Rogers*, 334 Ga. App. 58, 63 (1) (a) (778 SE2d 795) (2015). Other evidence and rules of professional conduct relating to the representation may also be considered in determining whether an attorney breached the standard of care. See *Allen*, supra at 377 (2) (c).

(a) *Credit for payment from joint account to the ex-husband's attorneys.* Rollins contends that the law defendants breached the standard of care by not ensuring that she received credit for fees paid to the ex-husband's attorneys from the couple's joint account in connection with the divorce case, and that she was harmed as a result of their error. She points to the temporary order entered in the divorce case on June 11, 2012, which relevantly provides as follows: $166,567.70 shall be immediately paid from the parties' jointly-held Credit Suisse account to the ex-husband's attorneys for legal services provided to him; this payment shall be credited against his future equitable division of the marital assets of the parties; and counsel shall execute a separate stipulation providing that this payment to the ex-husband's counsel shall be credited against his future equitable division of property. The memorandum of settlement provides that "[t]he temporary attorneys fees awards will remain as allocated[.]"

Rollins asserts that no separate stipulation was executed by counsel as ordered by the court, and that she was not given credit for the payment of the ex-husband's fees in the memorandum of settlement (executed on December 3, 2013); the final judgment and divorce decree entered on December 11, 2013 states that the parties settled all financial and property issues connected with the case and incorporates the settlement into the final decree.

The following evidence supports Rollins's assertion. An expert witness testified that Rollins "didn't get the credit for the attorney fees . . . that she was supposed to get. The 166,000. That somehow got forgotten in the agreement." An expert for the law defendants testified that he reviewed the file and did not "remember a stipulation that credits that [payment] against husband's future equitable division," but agreed that Rollins should have received the credit. Law defendant Smith deposed that he had not taken any steps to ensure that Rollins received credit for the attorney fees. Law defendant McGough testified that he "was not aware of any such separate stipulation or document, if there was one" and that he did not recall if he had raised the issue in negotiating the settlement.

The law defendants had a duty to exercise a reasonable degree of skill and care, *Stewart v. McDonald*, 347 Ga. App. 40, 49 (2) (b) (815 SE2d 665) (2018), and to act

10

with reasonable diligence and promptness in representing their client. See Ga. Rules of Professional Conduct Rule 1.3. There is evidence that the law defendants failed to exercise such care when they neglected to make sure that a separate stipulation was executed so that Rollins would receive the attorney fee credit as the court ordered.

There is also evidence that but for the law defendants' error in this regard, the outcome of the case would have been different. Specifically, given the court's temporary order, Rollins could have negotiated a better outcome absent that error - namely, an outcome that included a credit for the $166,567.70 attorney fee payment. There being evidence of proximate cause, the law defendants were not entitled to judgment as a matter of law on that part of Rollins's legal malpractice claim. See generally *Millsaps v. Kaufold*, 288 Ga. App. 44, 46-47 (653 SE2d 344) (2007). Compare *Szurovy*, supra (summary judgment for attorney was proper because client failed to establish damages and proximate cause; client failed to show that but for attorney's error she could have negotiated a better agreement or would have obtained better results in a trial).

The law defendants's contention that Rollins's legal malpractice claim is barred by the doctrine of judgmental immunity is without merit. Georgia's doctrine of judgmental immunity protects an attorney from liability for acts and omissions in the

11

conduct of litigation "which are based on an honest exercise of professional judgment." *Engelman v. Kessler*, 340 Ga. App. 239, 244 (1) (797 SE2d 160) (2017); *Mosera*, supra at 232. The doctrine recognizes that "the tactical decisions made during the course of litigation require, by their nature, that the attorney be given a great deal of discretion." *Hudson v. Windholz*, 202 Ga. App. 882, 886 (3) (416 SE2d 120) (1992) (citation and punctuation omitted).

But the law defendants point to no evidence (nor do they assert) that their alleged failure to execute a court-ordered separate stipulation ensuring that Rollins received credit for the payment of the ex-husband's fees from the joint account was based on an honest exercise of professional judgment. Compare id. (legal malpractice claim was barred by judgmental immunity where "the evidence of record clearly indicate[d] that defendant assessed the relative strengths and weaknesses of the plaintiffs' claims . . . and exercised his best, informed judgment prior to recommending that plaintiffs execute the release" in the underlying case).

The law defendants also argue that Rollins cannot establish proximate cause because she entered into a settlement in the divorce case. They maintain that "[w]hen a client takes the case out of the lawyer's hands by settling, she severs proximate cause." See *Jim Tidwell Ford, Inc. v. Bashuk*, 335 Ga. App. 668, 670 (1) (782 SE2d

721) (2016). However, the case on which they rely, *Jim Tidwell Ford*, involves peculiar facts and a procedural status readily distinguishable from those of the instant case. In *Jim Tidwell Ford*, the client alleged that its defense attorney in a personal injury case failed to obtain and properly present evidence at the trial of the case (which trial resulted in a verdict for the plaintiff), but the client settled the personal injury case after filing the notice of appeal and then dismissed its appeal in the personal injury case; this Court held that by settling the underlying case while the appeal in that case was pending, the client could not prove that it would have prevailed in the personal injury case absent the attorney's acts. Id. at 670 (1). The issue in the instant case, however, is limited to the attorneys' allegedly deficient representation of their client in connection with the settlement agreement. Notably, the law defendants' reading of *Jim Tidwell Ford* suggests that an attorney could never commit actionable malpractice for giving a client bad advice in connection with a settlement agreement, even where the malpractice claim is based on the attorney's manner of settling the case. But see, e.g., *Millsaps*, supra, and *Szurovy*, supra, both of which involved clients alleging that the attorneys in their divorce cases committed legal malpractice - and the parties in the underlying divorce cases had entered into settlement agreements. Those cases were decided on appeal without any discussion

13

of whether the settlement agreements severed proximate cause. *Millsap*, supra; *Szurovy*, supra.

Accordingly, the trial court erred by granting summary judgment to the law defendants as to the attorney fee credit issue.

(b) *Tax consequences*. Rollins asserts that the law defendants breached the standard of care by failing to make sure that she understood all the tax consequences associated with the memorandum of settlement she signed. She argues that the memorandum of settlement provided that she would receive $15,350,000 from the couple's joint Credit Suisse account, but that the tax consequences associated with the transfer of those assets significantly reduced the value of the assets.[4] Rollins

---

[4] The pertinent provision states:

[Rollins] will receive assets from the joint Credit Suisse account of $15,350,000.00. The assets to be transferred to [Rollins] will be allocated from a proportional share of all assets in the account so as to distribute the unrealized capital gains to the parties on a pro-rata basis. The parties understand that there is a sizeable margin loan associated with the account. The distribution of $15,350,000.00 in assets to [Rollins] will have the effect of calling due a significant portion of the margin loan. A pro-rata share of the margin loan will therefore have to be transferred to [Rollins], along with the associated assets required to cover that pro-rata share of the margin loan. This will not have the effect of reducing the value of the $15,350,000.00 in assets to [Rollins]. [The

14

asserts that the law defendants did not properly advise her as to those tax consequences, and that they had her sign (without discussion) a document in which she released any claims she had against the ex-husband and Credit Suisse regarding the tax consequences associated with the settlement.

To support her claim, Rollins points to an expert's testimony that financial advisors and/or accountants typically review and provide input before a matrimonial agreement is signed to protect a party concerning tax and financial issues; an expert's testimony that an attorney has a duty to know the terms of the client's settlement agreement, including the tax impact, and to make sure the client understands the terms to which he/she is agreeing; testimony that the law defendants did not ensure that she understood the tax consequences of receiving assets encumbered by margin loans from the joint account pursuant to the settlement; evidence that no tax professional reviewed the memorandum or gave Rollins financial advice regarding those tax consequences until after the memorandum was executed; and evidence that Rollins incurred substantial capital gains taxes in connection with the transfer and liquidation of the account assets.

---

ex-husband] will determine the date of transfer, but it will happen on or before 12/31/13.

15

Even if we assume arguendo that the law defendants did not adequately advise Rollins of the tax consequences inherent in the settlement agreement, Rollins cannot show that absent the law defendants' conduct she would have achieved a better result.

Although the parties disagree as to whether the law defendants adequately advised Rollins concerning the tax consequences associated with the transfer of the account assets before she signed the memorandum of settlement (December 3, 2013), it is clear from the record that Rollins knew that the tax consequences of the proposed settlement were an issue before she signed the settlement agreement and that she accepted and retained payment of the account assets with knowledge of the tax consequences.

On November 10, 2013, financial professionals Homrich Berg sent an email to law defendant Smith containing an analysis of the Credit Suisse account, including value, cash flow, unrealized capital gains, and capital gains taxes. On November 11, 2013, Smith emailed Rollins, attaching an expert's analysis of the account. On November 12, 2013, Smith sent Rollins another email, this time attaching a draft of a proposed settlement and property division chart.

The parties underwent mediation on November 19, 2013. During mediation, Rollins personally requested from Credit Suisse a report on the current status of the

joint account, including the value and costs. The same day, Credit Suisse emailed to Rollins a "[D]etailed Unrealized Gains/Losses Report" on the account, which Rollins forwarded to one of her attorneys, Everett Doffermyre (who is not a party to the legal malpractice action but whose primary role in the divorce case was to lead negotiations and settlement). The parties did not reach a resolution at mediation.

On November 25, 2013, the ex-husband's attorney, Scott Berryman, sent Doffermyre an email that purportedly memorialized the ex-husband's final offer at mediation, which included a transfer of $13,000,000 to Rollins from the Credit Suisse account, with "a proportional share of all assets in the account so as to distribute the unrecognized capital gains to the parties on a pro-rata basis." Rollins admitted on deposition that Smith told her that there would be unrealized capital gains on the $13,000,000, though she also testified that the law defendants told her there would be no tax consequences.

On November 28, 2013, Rollins sent an email to Doffermyre stating that she wanted to receive one-half of the joint account, with a proportional share of all account assets "so as to distribute the unrealized capital gains to the parties on a pro-rata basis[.]" On December 2, 2013, Doffermyre emailed to Berryman a counteroffer, which, again, included equal distribution of capital gains. Rollins was present with

Doffermyre and law defendant McGough when they negotiated the settlement that evening. The parties reached an oral settlement, which Berryman reduced to writing and Doffermyre edited. The relevant language of the memorandum of settlement was identical to the letter dated November 25, 2013, except that the new settlement amount as to the account was $15,350,000 instead of $13,000,000. The parties signed the memorandum on December 3, 2013.

After Rollins signed the memorandum of settlement, she employed financial advisors to review the settlement in connection with the tax consequences of the Credit Suisse account provision. In an email to the law defendants on December 10, 2013, Rollins stated, "I seem to have huge tax consequences," adding that she would be meeting with three financial firms that week. Rollins's newly hired financial advisors notified her that the transfer of the margin loan would reduce the value of the $15,350,000 in assets awarded because Rollins would have to sell the assets to liquidate the margin loan and thus incur capital gains taxes.

On December 12, 2013, Credit Suisse proposed a division of the joint account's assets to comply with the settlement memorandum; the proposed division showed capital gains taxes on the assets. Credit Suisse sent the proposed division of assets to Rollins, the ex-husband and attorneys for both parties. In a December 13, 2013 email

18

to Credit Suisse and opposing counsel, Doffermyre objected to the proposed division of the account assets, complaining that the proposed division would reduce the value of the $15,350,000 amount because Rollins would have to use some of that to pay capital gains taxes. Doffermyre notified Rollins by email that he had voiced his objection to Credit Suisse regarding the proposal. Berryman replied by email to Doffermyre, Smith, and Credit Suisse that Credit Suisse's proposed division was correct, and that the parties had agreed that Rollins's assets would include unrealized capital gains.

Rollins then authorized Doffermyre to settle the capital gains issue, explaining that she needed money for living expenses. On December 18, 2013, Doffermyre sent an email to Rollins, stating, "I think the decision not to fight the contract issue on capital gains is the right one," that "the chief priority is to get your funds into your hands," and that "[r]emoving this issue will do that."

On December 18, 2013, Rollins and the ex-husband signed an acknowledgment prepared by Credit Suisse wherein they agreed with the final division of the account as proposed by Credit Suisse pursuant to the memorandum of settlement, that they accepted the assets and liabilities designated for their respective receipt, and that neither party would have any claim against the other for the payment of any tax

19

liabilities in the assets received. Credit Suisse transferred the assets to Rollins, who liquidated them and paid capital gains taxes in connection with the transactions.

Thus, the record affirmatively shows that any failure of the law defendants to advise Rollins that there were tax consequences associated with the transfer of the account assets was not the cause of Rollins's alleged injury. Rollins signed the settlement agreement knowing there was at least an issue remaining as to whether the assets were encumbered with an obligation to pay capital gains taxes; she later authorized her attorneys to settle the capital gains issue knowing that Credit Suisse and opposing counsel maintained that the assets would be encumbered by capital gains taxes; she subsequently signed an acknowledgment expressly accepting the division of the assets as proposed by Credit Suisse and the tax consequences associated therewith; and she obtained and kept the proceeds from the account knowing there were "significant tax consequences."

We agree with the trial court's conclusion that Rollins made an independent, well-informed and deliberate decision to accept the assets with the attendant tax consequences. See generally *Hudson v. Windholz*, 202 Ga. App. 882, 886 (3) (416 SE2d 120) (1996). Rollins's decision to accept the terms of the agreement under the circumstances and then accept and retain the proceeds pursuant to the agreement -

20

despite having knowledge of the tax consequences - was an intervening event that caused her alleged damages. See id. Rollins has not shown that the outcome of the divorce action would have been different but for the law defendants' failure to adequately advise her regarding the settlement's tax consequences. See *Szurovy*, supra at 452-453 (defendant in legal malpractice case was entitled to summary judgment where plaintiff failed to point to evidence that but for counsel's errors she could have negotiated a better settlement or would have obtained better results at trial); compare *Millsaps*, supra at 47.

(c) *Inequitable division of assets*. Rollins contends that the memorandum of settlement gave her less than 40 percent of the primary marital asset (i. e., the Credit Suisse account), did not give her the marital residence or any of its equity, and did not give her any interest in the ex-husband's retirement account or business partnerships. Of course, the division of assets was set out in the memorandum of settlement, which Rollins was required to read. See *Mosera*, supra at 232 (2). Thus, she signed the agreement with knowledge that she was receiving (or not receiving) the aforementioned assets.

In any event, "[a]n equitable division of marital property does not necessarily mean an equal division. . . .[and] an award is not erroneous simply because one party

21

receives a seemingly greater share of the marital property." *Benson v. Ward*, 343 Ga. App. 551, 555 (1) (807 SE2d 471) (2017) (citation omitted). Notably, there was evidence that the ex-husband was unwilling to settle for a higher amount and that some of the assets at issue would not have been subject to equitable distribution. Indeed, except with respect to the attorney fee credit issue, the law defendants may have been exercising their best, informed judgment in negotiating and recommending the settlement in this case. See generally *Hudson*, supra. Rollins cannot show that, but for the law defendants' alleged error, the outcome would have been different. See generally *Szurovy*, supra.

(d) *Rollins's attorney fees in divorce case*. Rollins asserts that a fact issue exists as to whether the ex-husband should have been required to pay the legal fees she incurred in the divorce case. She points to expert testimony that, given the circumstances of the divorce, she should not have been required to pay her own legal fees. However, it would have been within the sound discretion of the trial court to award attorney fees to a party in a divorce action. See OCGA § 19-6-2 (a) (1); *Brock v. Brock*, 279 Ga. 119 (4) (610 SE2d 29) (2005) (finding no abuse of the trial court's discretion in not awarding attorney fees to wife in divorce action). Rollins thus cannot show that but for the law defendants' alleged error in this regard, the outcome of the

22

divorce action would have been different. The trial court properly granted summary judgment to the law defendants. See generally *Szurovy*, supra; *Edwards v. Moore*, 351 Ga. App. 147, 150 (1) (830 SE2d 494) (2019) (attorney was entitled to summary judgment on claim that he was negligent for failing to assert a claim for alimony because there is no inherent right to alimony and client could not show that but for attorney's error the outcome would have been different).

3. Rollins contends that her claim for punitive damages presents issues of fact for a jury because the law defendants' actions were wilful, wanton, and exhibited an entire want of care. See *Doctoroff v. Perez*, 273 Ga. App. 560 (615 SE2d 623) (2005) ("Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or [an] entire want of care[.]") (punctuation omitted).

Although Rollins points to evidence showing that the law defendants may have breached the standard of care by failing to ensure that the separate attorney fee credit stipulation was executed, that evidence shows, at most, a negligent breach of duty. "[M]ere negligence, [even if] gross, will not alone authorize the recovery of punitive damages. There must be circumstances of aggravation or outrage." *Roberts v. Quick*

*RX Drugs*, 343 Ga. App. 556, 562 (2) (807 SE2d 476) (2017) (citations and punctuation omitted). We find no evidence from which a jury might properly conclude that an award of punitive damages is warranted in this case. Thus, the trial court did not err by granting summary judgment to the law defendants on Rollins's claim for punitive damages. See id.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and Brown, J., concur.*