**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**January 24, 2025**

# In the Court of Appeals of Georgia

A24A1390. STANTON et al. v. STOUT KAISER, LLC et al.

GOBEIL, Judge.

Ratdavone Stanton[1] and Mark Stanton (the "Plaintiffs") appeal from an order of the Fulton County State Court granting summary judgment (among other things) in favor of Stout Kaiser, LLC and M. Brent Walker[2] (the "Defendants") in this underlying legal malpractice suit. The Plaintiffs allege that the trial court erred in granting summary judgment in favor of the Defendants with respect to the Plaintiffs' claims for professional malpractice, intentional and negligent misrepresentation,

---

[1] Ratdavone Stanton also is referred to as "Ratdavone Luangrath" in parts of the record.

[2] At the time of the proceedings underlying this appeal, Walker initially was employed as an attorney with Stout Kaiser and later for the Walker Firm.

breach of contract, and breach of fiduciary duty. For the reasons that follow, we affirm in part, vacate in part, and remand for further proceedings not inconsistent with this opinion.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant." *Havenbrook Homes, LLC v. Infinity Real Estate Investments, Inc.*, 356 Ga. App. 477, 478 (847 SE2d 840) (2020) (citations and punctuation omitted).

So viewed, the record shows that the Plaintiffs are the principals of Thai Heaven, LLC, a Georgia limited liability company. On September 11, 2009, Thai Heaven entered into a lease with Diplomat PR Hotels, LLC ("Diplomat") to operate a restaurant in Hapeville, Georgia (the "Lease"). The Plaintiffs also executed a personal guaranty with respect to the Lease. In December 2013, Diplomat assigned its rights under the Lease and guaranty to Hapeville Capital, LLC ("Hapeville").

In March 2016, Thai Heaven sold its business assets to the principals of The Crab Spot ("Crab Spot") pursuant to the terms of an asset purchase contract. Thai Heaven also assigned all of its rights and obligations under the Lease with Hapeville

to Crab Spot, including the obligation to make all rent payments due to Hapeville after March 11, 2016. Pursuant to the Lease, although Thai Heaven could assign the Lease without the consent or authorization of Hapeville, "[n]o assignment or subletting of [Thai Heaven's] interest permitted under [the Lease] shall in any way release [Thai Heaven] of any liability, guarant[y,] or responsibility under the terms of this Lease . . . ."

On March 28, 2016, Hapeville sent a demand letter to Thai Heaven alleging default under the Lease, failure to pay rent, failure to abide by the requirement that the space be used only as a Thai restaurant, and making changes to the property without prior approval. Hapeville then instituted a dispossessory action against Thai Heaven in the Magistrate Court of Fulton County. Meanwhile, Thai Heaven, along with Crab Spot, sued Hapeville in a separate action in the Superior Court of Fulton County for tortious interference with a contract, defamation, injunctive relief, and attorney fees. The Plaintiffs "conferr[ed]" with the Defendants in connection with the litigation involving Hapeville.

Hapeville, Thai Heaven, and Crab Spot entered into a settlement agreement on May 26, 2016, with respect to both cases. Crab Spot was included in the settlement

agreement as Thai Heaven's subtenant, and the Lease was continued. The agreement was signed by Mark Stanton as manager of Thai Heaven. As relevant here, the Plaintiffs agreed that they were to "remain guarantors under the Lease." The parties also released each other from claims only up to the effective date of the settlement agreement, May 26, 2016; Hapeville did not release Thai Heaven and Crab Spot from "any future claims or future defaults of the Lease." Pursuant to the terms of the settlement agreement, the parties agreed to dismiss their respective actions.

On July 25, 2016, Hapeville sued the Plaintiffs on the personal guaranty, alleging that it never received the rent payment due on July 1, 2016 under the Lease and the settlement agreement (the "guaranty action").[3] The Plaintiffs retained the Defendants to represent them in the guaranty action. Walker left Stout Kaiser and later notified the Plaintiffs in writing that he had left the firm in May 2017 to start his own firm and he took the Plaintiffs' case with him. There is no indication in the record that Stout Kaiser filed a notice of withdrawal in the action.

---

[3] On October 1, 2016, Hapeville and Crab Spot executed a new lease with the term beginning on October 1, 2016. The new lease ended Thai Heaven's obligation to make rent payments to Hapeville. Under the terms of this lease, Crab Spot's first monthly rental payment was due to Hapeville on November 1, 2016.

4

Hapeville moved for summary judgment on its claims against the Plaintiffs in the guaranty action. The trial court granted summary judgment to Hapeville as to liability in May 2018. The court, however, determined that Hapeville had not sufficiently proven damages and the case proceeded to trial on that issue. The trial court held a bench trial on damages on November 28, 2018, at which no one appeared on behalf of the Plaintiffs. In an order entered on November 28, 2018, the trial court struck the Plaintiffs' answer and awarded Hapeville damages in the amount of $102,479.99.[4]

Following entry of the trial court's order, the Plaintiffs filed a motion for new trial. Walker also filed an affidavit with the court on December 28, 2018, stating that he did not receive notice of the bench trial (which had been continued from an earlier date to "the next jury trial calendar") until two days prior to trial, when he was copied by Hapeville's attorney on an e-mail to the judge's staff attorney. Walker stated that he spoke with the staff attorney, who explained that the notice had been published in the county legal organ at the end of October 2018, that a continuance would likely not

---

[4] The damages award consisted of rent payments due from July to October 2016 (including applicable late fees), common area maintenance fees for the property, and attorney fees.

5

be granted, and suggested that the parties attempt to reach a settlement. Walker explained that the Plaintiffs, who had moved to Texas, could not appear in person on such short notice. The court denied their motion for new trial — finding in relevant part that it had provided sufficient notice to the Plaintiffs and that Walker, even though he did not reside in Texas, also failed to appear at the trial to present any evidence or to cross-examine Hapeville's witnesses. The Plaintiffs then appealed the court's damages award and the denial of their motion for new trial. Walker withdrew as the Plaintiffs' counsel before the appeal was complete. This Court affirmed the judgment on appeal in a decision issued pursuant to Court of Appeals Rule 36. See *Stanton v. Hapeville Capital, LLC*, Case No. A20A1563 (June 15, 2021).

The Plaintiffs filed the instant renewal action on August 14, 2020,[5] in which they alleged that the Defendants committed professional malpractice, intentional and negligent misrepresentation, breach of fiduciary duty, and breach of contract during the course of the guaranty action by, among other things, failing to (1) file a third-party complaint against Crab Spot; (2) demand arbitration or a jury trial on damages; (3) conduct meaningful discovery; and (4) appear at the bench trial on damages.

---

[5] The Plaintiffs previously dismissed without prejudice their complaint filed on February 24, 2020.

6

The Defendants separately moved for summary judgment in December 2021, arguing in pertinent part that the Defendants' actions were not the proximate cause of the Plaintiffs' damages in the guaranty action and that because all of the Plaintiffs' other claims were duplicative of their legal malpractice claim, those claims also failed as a matter of law. Following an extended discovery period, Stout Kaiser renewed and supplemented its summary judgment motion. The trial court held a hearing on all pending motions on August 10, 2023, a transcript of which does not appear in the record.

In an order dated January 19, 2024, the trial court disposed of multiple pending motions, including: (1) denying the Plaintiffs' motions to strike; (2) granting the parties' motions for judicial notice; (3) denying the Defendants' motion to strike expert affidavit and testimony; and (4) granting the Defendants' motions for summary judgment. As relevant here, the court found that there remained a genuine issue of material fact as to whether Walker's actions (including his failure to appear at the trial on damages in the guaranty action) fell below the applicable standard of care. However, the court went on to find that the Plaintiffs' malpractice claim against Walker failed as a matter of law because they could not prove the essential element of

7

proximate causation, as their obligations under the personal guaranties were such that any alleged professional malpractice on Walker's part would not have altered the outcome of the guaranty action. Because the Plaintiffs' claims for misrepresentation, breach of contract, and breach of fiduciary duty were duplicative of the legal malpractice claim, the court found that Walker also was entitled to summary judgment on these claims.

With respect to Stout Kaiser, the trial court found that there remained a genuine issue of fact as to whether the Plaintiffs had a reasonable basis for believing that Stout Kaiser continued to represent them in the guaranty action after May 31, 2017, noting for example that Stout Kaiser did not file a notice of withdrawal as counsel of record and Walker never filed a notice of change of firm or address. The court highlighted that the Plaintiffs also alleged purported acts of professional negligence that predated Walker's departure from Stout Kaiser. Nevertheless, the court went on to grant Stout Kaiser's motion for summary judgment for the same reasons it granted Walker's motion. The Plaintiffs then filed the instant appeal.

1. The Plaintiffs assert that the trial court erred in concluding that the Plaintiffs failed to put forth sufficient evidence to create a jury issue on proximate causation.

More specifically, the Plaintiffs contend a question of material fact remains as to whether the Defendants' alleged professional malpractice was the proximate cause of the Plaintiffs' damages in the guaranty action.

> In order to prevail on a legal malpractice claim, a plaintiff must establish three elements: (1) employment of the defendant attorney, (2) failure of the attorney to exercise ordinary care, skill, and diligence, and (3) that such negligence was the proximate cause of damage to the plaintiff. A claim for legal malpractice is sui generis insofar as the plaintiff's proof of damages effectively requires proof that he would have prevailed in the original action but for the act of the attorney charged with malpractice.

*Jim Tidwell Ford, Inc. v. Bashuk*, 335 Ga. App. 668, 670 (1) (782 SE2d 721) (2016) (citations and punctuation omitted). "To establish proximate cause, the [plaintiff] must show that but for the attorney's error, the outcome would have been different; any lesser requirement would invite speculation and conjecture. The defendant attorney is entitled to summary judgment if he shows that there is an absence of proof adduced by the [plaintiff] on the issue of proximate cause." *Mosera v. Davis*, 306 Ga. App. 226, 230-231 (2) (701 SE2d 864) (2010) (citation and punctuation omitted).

Pretermitting whether the Defendants' failure to appear at the bench trial on damages in the guaranty action breached the applicable standard of care, we agree with the trial court that the Plaintiffs failed to establish proximate causation in that "but for [the Defendants'] negligence in the underlying case, the [P]laintiff[s] would have prevailed [in the guaranty action.]" *Leibel v. Johnson*, 291 Ga. 180, 182 (728 SE2d 554) (2012) (citation and punctuation omitted).

In their complaint, the Plaintiffs' allegations that Walker committed malpractice (by failing to conduct meaningful discovery, failing to implead Crab Spot, and failing to appear at the damages bench trial in the guaranty action) are all grounded in their assertion that had Walker properly represented them, the outcome of the guaranty action would have been different. The Plaintiffs contend that had Hapeville's "undisclosed" direct dealings with Crab Spot come to light, this would have provided the Plaintiffs with a viable defense in the guaranty action. They allege that Hapeville's entering into a lease with Crab Spot — which did not require Crab Spot to make rent payments until November 1, 2016 — interfered with Crab Spot's obligations to make rent payments for the months prior to November 2016 under its lease agreement with the Plaintiffs. That fact, the Plaintiffs contend, should have been

sufficient to discharge them from their guaranty obligations for those months. However, as noted by the trial court, based on the plain language of the guaranties and the Lease, the Plaintiffs' legal malpractice claim fails as a matter of law. See *Ashton Atlanta Residential, LLC v. Ajibola*, 331 Ga. App. 231, 232 (770 SE2d 311) (2015) ("If there is no evidence sufficient to create a genuine issue as to any essential element of plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial.") (citation and punctuation omitted).

In this case, the terms of the Lease provided that

[n]o assignment or subletting of [Thai Heaven's] interest permitted under this Article shall in any way release [Thai Heaven] of any liability, guarantee[,] or responsibility under the terms of this Lease and any assignee of [Thai Heaven] shall become directly liable to Landlord for all obligations of [Thai Heaven] hereunder arising subsequent to the assignment[.]

Additionally, the guaranty specifically applied to any assignment of the Lease by Thai Heaven, under which the Plaintiffs

agree[d] that if default or breach shall at any time be made by [Thai Heaven] in the payment of rent under the Lease, or if [Thai Heaven] should default in the performance and observance of any of the covenants and Terms contained in the Lease, Guarantor shall pay the

11

rent and any arrears thereof, to Landlord, and shall faithfully perform and fulfill all such covenants and Terms of the Lease, and shall forthwith pay to Landlord all damages that may arise or are incident to or consequence of any default or breach by [Thai Heaven] under the Lease, and/or by the enforcement of this Guaranty, including without limitation, all attorneys' fees, court costs, and other expenses and costs incurred by Landlord.

The guaranty also stated that

[The Plaintiffs] hereby further covenant[ ] and agree[ ] that this instrument constitutes a continuing guaranty, and the liability of [the Plaintiffs] hereunder *shall in no way be affected, modified, or diminished by reason of any assignment, renewal, modification, or extension of the Lease* or any modification or waiver of or change in any of the covenants and terms of the Lease by agreement of Landlord and [Thai Heaven], or by any extension of time that may be granted by Landlord to [Thai Heaven] or any indulgence of whatever kind granted to [Thai Heaven], or any dealings or transactions or matter or thing occurring between Landlord and [Thai Heaven], including without limitation, any adjustment, compromise, settlement, accord and satisfaction, or release, or any bankruptcy, insolvency, reorganization, arrangement, assignment for the benefit of creditors, receivership, or trusteeship affecting [Thai Heaven].

(Emphasis supplied.) Additionally, under the terms of the parties' settlement of their previous litigation, the Plaintiffs agreed that they were to "remain guarantors under the Lease" and that they were not released or discharged from "any future claims or future defaults of the Lease."

Based on the plain language of the Lease, the guaranty, and the settlement agreement, Thai Heaven remained responsible for rent payments (even after the assignment of the lease to Crab Spot) and the Plaintiffs were personally required to pay that rent pursuant to the terms of their guaranty in the event that either Thai Heaven or Crab Spot failed to pay. See *Highwoods Realty, L. P. v. Community Loans of America, Inc.*, 288 Ga. App. 226, 229 (653 SE2d 807) (2007) ("Where the language of the contract is plain, unambiguous, and capable of only one reasonable interpretation, no other construction is permissible.") (citation and punctuation omitted). As a result, the Plaintiffs have failed to show that had the Defendants performed their legal duties in a different manner, the result of the guaranty action would have been any different (including the amount of damages awarded),[6] and the

---

[6] The total damages award in the guaranty action of $102,479.99 consisted of $93,140.90 in unpaid rent from June to October 2016, including late fees and common area maintenance fees due under the terms of the Lease and the settlement agreement; and $9,339.09 in attorney fees due under the terms of the personal guaranty signed by

trial court properly granted the Defendants' motion for summary judgment on the professional negligence claim. See *Mosera*, 306 Ga. App. at 231 (2) (plaintiff failed to present evidence that the allegedly contradictory terms and poorly drafted sections of settlement documents that he executed were the proximate cause of any damages he sustained, as necessary to withstand grant of summary judgment on his legal malpractice claim against attorneys and law firm that negotiated the settlement).

2. The Plaintiffs also argue that the trial court erred in ruling that their claims for misrepresentation, breach of fiduciary duty, and breach of contract were duplicative of the legal malpractice claim.

In its order, the trial court found that the Plaintiffs' claim for legal malpractice is based on the same acts or failures to act that gave rise to their other claims, including the Defendants' alleged failure to file a third-party complaint against Crab Spot, demand arbitration or a jury trial on damages, conduct meaningful discovery, and appear at the bench trial on damages. The court explained that where, as here, the

the Plaintiffs. See OCGA § 13-1-11 (a) (2) ("If such note or other evidence of indebtedness provides for the payment of reasonable attorney's fees without specifying any specific percent, such provision shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00[.]").

other claims arise from the same source as the legal malpractice claim (namely, the attorney-client relationship), are allegedly breached by the same conduct, and the damages flowing from each claim are no different than the alleged legal malpractice, Georgia law provides that the claims for legal malpractice and the other claims (including misrepresentation, breach of fiduciary duty, and breach of contract) cannot be asserted separately. See, e.g., *Titshaw v. Geer*, 368 Ga. App. 266, 269 (2) (888 SE2d 301) (2023) (affirming the trial court's grant of summary judgment where plaintiff's claims for breach of contract against defendants was based upon the same conduct underlying their legal malpractice claim, namely, that the defendants negligently advised plaintiff to file for bankruptcy).

However, after briefing closed in the instant case, the Supreme Court of Georgia issued an opinion disapproving of our opinion in *Titshaw* as well as a line of cases that the trial court relied upon in its order in holding that Georgia law prohibits a plaintiff from maintaining separate causes of action where each cause of action is based on the same conduct, the same damages, and a breach of a duty arising from the same source. *Titshaw v. Geer*, ___ Ga. ___ (3) (c) (907 SE2d 835) (Case No. S23G1124, Oct. 22, 2024). The Court explained:

15

> To the extent that the Court of Appeals concluded that Plaintiffs were not permitted to maintain separate claims for legal malpractice and breach of contract based on the same conduct, it erred. Under Georgia law, plaintiffs are permitted to pursue alternative theories of relief based on causes of action with different elements, even when those causes of action arise from the same underlying conduct. . . . And we further clarify that plaintiffs are not prohibited from simultaneously pursuing different causes of action with different elements simply because the claims involve the same underlying conduct, the same damages, and duties deriving from the same source.

Id. (citations and punctuation omitted). The Court proceeded to find that we erred in concluding that, because the breach-of-contract-for-legal services claim against the defendant was based on the same underlying conduct as the legal-malpractice claim, the breach-of-contract claim was subject to dismissal.[7] Id. The Court therefore vacated Division 4 of our opinion in *Titshaw* and remanded for further proceedings with instructions to

> consider whether it is possible, within the framework of the complaint, for the plaintiff to prove that the breach-of-contract claim was filed

---

[7] The Supreme Court explained that we should have analyzed whether the trial court properly denied the defendant's motion to dismiss the breach-of-contract-for-legal-services claims as barred by the statute of limitation by employing "the well-established motion-to-dismiss standard[.]" *Titshaw*, ___ Ga. at ___ (3) (d).

within the applicable limitation period. Only if it is certain that the plaintiff cannot make such a showing should the court grant the motion to dismiss the breach-of-contract claim as barred by the statute of limitation.

*Titshaw*, ___ Ga. at ___ (3) (d).

As relevant to the instant case, the Supreme Court also vacated Division 2 of our opinion in *Titshaw* (cited in the trial court's opinion), in which we affirmed the trial court's grant of summary judgment on the basis that the plaintiff's claims for breach of contract against the defendants were based upon the same conduct underlying its legal malpractice claim, namely that the defendants negligently advised the plaintiff to file for bankruptcy. 368 Ga. App. at 269 (2). The Supreme Court acknowledged that the parties had reached a settlement, rendering the appeal moot as to the breach-of-contract claim addressed in Division 2 of our opinion. See *Titshaw*, ___ Ga. at ___ (2). Nevertheless, the Court exercised its discretion to disapprove of our analysis in Division 2, explaining that "a conflict in precedent would arise if [the Court] vacated Division 4 but not Division 2 of the Court of Appeals' opinion[.]" Id. at ___ (2), (3) (d). The Supreme Court also disapproved of a line of cases relied upon in the trial court's order in the instant case. Id. at ___ (3) (c). See e.g., *Smiley v.*

*Blasingame, Burch, Garrad & Ashley, P. C.,* 352 Ga. App. 769, 776 (2) (835 SE2d 803) (2019) (affirming grant of summary judgment in favor of law firm defendant where clients' claims for breach of fiduciary duty and misrepresentation were duplications of their legal malpractice claim, and thus could not be asserted separately); *Anderson v. Jones*, 323 Ga. App. 311, 318 (2) (745 SE2d 787) (2013) (affirming summary judgment in favor of defendant on plaintiff's breach of fiduciary claim where the "record shows that the claim duplicated her legal malpractice claim: the duties arose from the same source (that is, the attorney-client relationship), were allegedly breached by the same conduct, and allegedly caused the same damages"), disapproved on other grounds by *Coe v. Proskauer Rose, LLP*, 314 Ga. 519, 528-529 (2) (878 SE2d 235) (2022); *Oehlerich v. Llewellyn*, 285 Ga. App. 738, 740-741 (2) (647 SE2d 399) (2007) (holding that the trial court properly granted summary judgment on plaintiffs' breach of contract and breach of fiduciary duty claims when they were simply a duplication of his legal malpractice claim).

In light of the Supreme Court's recent decision in *Titshaw*, to the extent that the trial court concluded that the Plaintiffs were not permitted to maintain separate claims for misrepresentation, breach of contract, and breach of fiduciary duty based

on the same conduct as their claim for professional malpractice, the court erred. We therefore vacate the trial court's grant of summary judgment to the Defendants on the Plaintiffs' claims for intentional and negligent misrepresentation, breach of fiduciary duty, and breach of contract and remand to the trial court for further proceedings not inconsistent with this opinion.[8] See *Star Gas of Hawkinsville, Inc. v. Robinson*, 232 Ga. App. 407, 407-408 (501 SE2d 598) (1998) (trial court's reliance, in denying plaintiff's motion for new trial, on authority that was later disapproved by the Supreme Court required vacating judgment and remanding for further proceedings).

*Judgment affirmed in part, vacated in part and case remanded with direction. Barnes, P. J., and Pipkin, J., concur.*

---

[8] See OCGA § 9-11-56 (c) (providing that "[summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law").